GEORGE R. KELLOWAY & others *vs.* BOARD OF APPEAL OF MELROSE & others.

(and a companion case).

Middlesex. January 7, 1972. — February 25, 1972.

Present: TAURO, C.J., CUTTER, SPIEGEL, REARDON, & QUIRICO, JJ.

*Zoning,* Board of appeals: Melrose board; Variance; Enforcement. *Certiorari. Equity Jurisdiction,* Declaratory relief. *Damages,* For zoning violation. *Easement. Melrose.*

The Melrose zoning board of appeal existing under St. 1924, c. 22, remained in existence even after revision of the zoning enabling act by St. 1954, c. 368, § 2. [255-256]

A certain apartment complex for the elderly in Melrose, which did not conform to several requirements of the city's zoning ordinance, was in conflict with the "spirit" and general purpose of the ordinance, so that it was not within the power of the city's board of appeal under St. 1924, c. 22, § 3, to grant a variance for the project, and on certiorari a decision of the board granting a variance therefor to the Melrose Housing Authority would have been set aside if construction had not proceeded [256]; however, as a practical matter, it would be unthinkable, after completion of construction and occupancy of the project, to order it demolished, and this court instead ordered certain proceedings in which there would be opportunity for a change in the ordinance to permit the project, or, if no such change should be made, neighbors of the project could seek damages from the Authority for diminution in the value of their properties by reason of the presence of the project but on condition of their granting to the Authority an easement for its maintenance as against their properties [256-258].

BILL IN EQUITY filed in the Superior Court on May 12, 1969.

PETITION for a writ of certiorari filed in the Superior Court on May 22, 1969.

Following proceedings described in the opinion, including a transfer of the cases to the county court, the cases were reserved and reported by *Cutter*, J., without decicision.

The cases were submitted on briefs.

*James A. McAvoy, Jr.*, for the plaintiffs-petitioners.

*Paul E. Troy*, City Solicitor, for the Board of Appeal of Melrose.

*John J. McNaught* for the Melrose Housing Authority.

CUTTER, J. The petitioners seek relief by certiorari and also by a bill in equity under G. L. c. 40A, § 21, from the granting by the board of appeal to the Melrose Housing Authority (the Authority) of a variance for the construction of an apartment complex (the project) to provide accommodations for the elderly. The Authority (G. L. c. 121, § 26S, as amended through St. 1964, c. 636, § 7; and now by St. 1969, c. 751, § 1, transferred to G. L. c. 121B, § 28) is subject to local zoning provisions. A variance was necessary to permit the project to be carried out, because there would be violation of the Melrose zoning ordinance with respect to § 25–20 (height restrictions and number of stories), and § 25–21 (ratio of aggregate floor area to size of lot; set-back restrictions). There would also be a violation of off-street parking requirements. A Superior Court judge ordered that the petition for a writ of certiorari be dismissed. Another Superior Court judge sustained demurrers to the bill in equity, and, without decision, reported the bill on the pleadings for the determination of this court.

At the arguments on May 7, 1970, it became clear that the situation was seriously confused by the conflict between (a) the provisions of G. L. c. 40A, especially §§ 14, 15, and 21, inserted by St. 1954, c. 368, § 2, and (b) St. 1924, c. 22. This latter statute created a specially constituted board of appeal for Melrose. By c. 22, § 2, an appeal under the building or zoning ordinances could be taken to the board of appeal in a prescribed

manner. By § 3, set out in the margin,[1] the board of appeal was given a somewhat flexible power to grant variances.

The situation presented further difficulty because of the 1954 decision in *Fairman* v. *Board of Appeal of Melrose*, 331 Mass. 160, just prior to the 1954 revision of the zoning enabling act when G. L. c. 40A superseded c. 40 §§ 25–30B (repealed by St. 1954, c. 368, § 1). Chapter 368, § 3, stated that the provisions of c. 40A, "so far as they are the same as those of" §§ 25 to 30B, inclusive, of c. 40 "shall be construed as continuations of said provisions." [2] In the *Fairman* case, this court reversed a Superior Court decree holding invalid a variance granted by the Melrose board of appeal on the ground that the "decision of the . . . board was not based on any finding of hardship." Our decision (p. 161) was that the "board seems not to have been established under [c. 40] § 30, but to have been established under St. 1924,

---

[1] Section 3 reads (emphasis supplied), "After hearing . . . the board shall affirm, annul, reverse or modify the order, act or refusal appealed from. The board *may vary or dispense with the* application or *enforcement* of building or *zoning ordinances . . . in accordance with what appears to be board to be their true purpose and intent,* or where a literal interpretation thereof would result in manifest injustice; *provided, that no such decision shall conflict with the spirit of said ordinances* . . . . In exercising the above powers *the board may* affirm, annul, reverse or *modify in whole or in part the order,* act or refusal appealed from, *and* in appropriate cases and subject to appropriate conditions and safeguards it *may make special exceptions to the terms of said ordinances* . . . in harmony with the general purpose and intent thereof or *where such exceptions are reasonably necessary for the public convenience and welfare,* and to that end the board shall have all the powers of the officer, department or board from which the appeal was taken to make any order or refusal or to act in relation to the subject matter. Any |such] decision . . . shall require the assent of at least four members of the board. Each decision shall specify the variations and exceptions allowed, if any, and the reasons therefor . . . . The board . . . shall have such further powers and duties not inconsistent with law as the board of aldermen may from time to time prescribe."

[2] Counsel for the board of appeal in his brief, contends that "the pertinent language of G. L. c. 40, § 30, and G. L. c. 40A, § 21, are for all practical purposes the same," and that "the enactment of c. 40A, § 21, is no reason for a change in the interpretation[s] either of . . . [St.] 1924, c. 22, or of G. L. c. 40, § 30, as decided in the *Fairman* case. To the contrary, c. 40A must be regarded as a continuation of the similar provisions of c. 40, § 30, and the sole remedy open from a decision of the" board of appeal is by certiorari.

c. 22, which contains no provision for an appeal from a decision of the board to the Superior Court." This court ruled that the appropriate remedy "should have been a petition for a writ of certiorari."

We were in doubt in 1970 concerning the extent to which our decision must be based on St. 1924, c. 22, so far as that statute may be in conflict with generally comparable provisions of G. L. c. 40A (see e.g. § 15, as amended through St. 1958, c. 381) governing the circumstances in which and the bases upon which variances may be granted. Also, we recognized that substantial public funds had been expended on the project, then (1970) nearly completed. It appeared possible that some clarification of the confused situation might be accomplished by special legislation, revision of the Melrose zoning ordinance, further action before the board, or eminent domain proceedings. Accordingly, on May 14, 1970, we transferred the cases to the county court by an order which suggested various lines of inquiry and clarification. At intervals since that date, there have been hearings before the single justice. Legislation (St. 1971, c. 598 [3]) has been obtained, which may avoid some past and future confusion. The parties by counsel also filed on November 8, 1971, a stipulation concerning facts not fully reflected in the original record. The single justice (without decision) has reserved, reported, and retransferred the cases to the full court for its determination.

---

[3] Section 1 of the 1971 statute "abolished" the board of appeal. Section 2 repealed St. 1924, c. 22. Section 3 provided that "after the effective date of this act there shall be a board of appeals . . . of Melrose . . . governed by" G. L. c. 40A, "provided that the members of the board of appeal . . . in office on said date shall continue to serve and to exercise the duties . . . imposed upon them under . . . [c. 22] until the appointment, qualification and organization of the board of appeals under" c. 40A. Section 4 provides, "No suits, prosecutions or other legal proceedings in which said city is a party, pending on the effective date of this act, and no rights already accrued or penalties or forfeitures incurred under any such proceedings, shall be affected or impaired by the taking effect of this act." By § 5, St. 1971, c. 598 took "effect upon its passage."

The facts are stated as set out in the return of the board of appeal and the stipulation just mentioned. Some at least of the petitioners own property on Greenwood Street (to the west of the project) or on Ashburton Place (north of the project), either abutting or near the premises (locus) on which the project has been constructed. The Authority applied to the building commissioner on April 1, 1969, for a permit to build an apartment complex for housing the elderly poor. This was denied as a violation of art. IV, § 25–20 of the zoning ordinance. The Authority appealed to the board of appeal.

Notices of a proposed public hearing were published in a local newspaper on April 3, and 10, 1969,[4] and mailed on April 8, 1969, to each of the petitioners except Russell L. Johnson. He, in any event, was present and spoke at the hearing held on April 16, 1969.

The project, on a lot of about 40,000 square feet in a district zoned for residence and business purposes, did not comply with the zoning ordinance because of the height restriction and floor ratio violations already mentioned. At the hearing, the following evidence was received among other items. The project would provide 155 housing units, which would accommodate only 310 of the 1,500 elderly (over sixty-five) persons whose incomes were less than $3,000. The Authority then had spent more than $90,000 in site surveys, plans, and architects' fees. For the project a grant of $2,635,056 had been made by an agency of the Commonwealth. "[T]he State authorities had indicated that this was the only site in Melrose which would be approved by"

---

[4] The board of appeal by rule required notice of hearings to be published in the local newspaper "not less than four days in advance of the hearing" and "written notice of hearings [to be sent] to property owners within a radius of" 300 feet of the locus. Compare the somewhat more specific provisions on notices in G. L. c. 40A, § 17, as amended through St. 1968, c. 336. We conclude that the record shows compliance with the special procedural requirements of St. 1924, c. 22, and the board's rules.

it. Over seventy sheets of detailed plans and a site plan[5] were submitted, as well as a model of the project.

The board of appeal granted a variance[6] and, in doing so, wrote an opinion which is incorporated by reference in the board's return. The board pointed out that "it would have been more appropriate for the board of aldermen to [have] revise[d] the zoning ordinances to exempt property of this character from . . . the zoning laws" since property of a housing authority is "deemed to be public property used for essential public and governmental purposes." It stated that it believed if the Authority "were a private person he could not satisfy the requirements under which a variance . . . should be granted by this board." The board of appeal, however, granted the variance because the city had already committed $90,000 and because the city was " 'under a deadline from the Commonwealth, which if allowed to pass' . . . [might] result in loss of the entire amount to be furnished by the Commonwealth," viz. $2,635,056.

The petition for a writ of certiorari was filed on May 22, 1969. The bill in equity was filed on May 12, 1969.

The stipulation, filed when these cases were retransferred to the full court, sets forth developments (or the absence of them) since the completion of the original records in 1970. It refers to the enactment of c. 598 (see fn. 3, *supra*). The project (155 units for housing elderly near Greenwood Street, Melrose) has been completed and

---

[5] These plans showed that one segment of the project was to be nine stories (eighty-five feet high, exclusive of a twenty-four foot elevator penthouse) and another six stories in height, instead of a maximum height of four stories or sixty-two feet as provided by § 25–20 of the zoning ordinance. The project had an aggregate floor area of more than 100,000 square feet on the locus (about 40,000 square feet) exceeding the area requirements of § 25–21, par. 3, of the ordinance (two-thirds of the total lot area) several times.

[6] The board stated that lack of parking spaces was "no problem" because the elderly occupants "would not be expected to have many automobiles." They also referred to testimony "that any such facility should be . . . near a shopping center and means of transportation because many . . . tenants will not have means of private transportation." The proximity of the project to the municipal parking space to the east seems to remove the parking space problem as a consideration. The locus is near shops and transportation.

is fully occupied. There have been no new eminent domain takings or changes in the Melrose zoning ordinance or building code. No grade changes or roads adjacent to the project have occurred. The project has had no apparent effect on traffic or traffic patterns. Forty-three project tenants own automobiles and park them on land owned partly by the city and partly by the Authority. The parking area has the appearance of being a part of a municipal parking lot. Photographs (before and after the project's construction) and three maps (two of them showing elevations) of the area were also submitted to show the physical characteristics of the area at the times indicated on these exhibits.

The photographs and plans reveal that the project was placed on a lightly wooded vacant lot, not well maintained, in an area predominantly of small or medium-size residences but containing on Greenwood Street (within 300 feet to the south and southwest of the locus) a fourteen unit apartment building and a twenty-six unit apartment house. The project varies in height as already noted (fn. 5, *supra*). A substantial portion of the project is nine stories high. Relatively small superstructures rise even higher. The project complex has a simple, neat, brick exterior and a generally pleasing appearance. Unquestionably it somewhat overpowers in size some single family houses on the east side of Greenwood Street which lies a short distance west of the locus. From these houses the project is separated only by their rear yards and by a narrow strip of project land. To the north of the project is an extension of a street known as Ashburton Place. On the south lies a way, apparently now improved, known as Nason Drive. To the east the project is separated from the tracks of the Boston and Maine Railroad by the project's own parking area and by a municipal parking area adjacent to the Melrose Highlands railroad station.

1. The *Fairman* case, 331 Mass. 160, we think, decided that the board of appeal existing under St. 1924, c. 22, remained in existence even after the revision of the

zoning enabling act by St. 1954, c. 368, § 1.   The provision of St. 1971, c. 598, § 3, continuing the members of the board of appeal in office until a new board is appointed, gives support to our conclusion.   We assume (without deciding) that the variance provisions of § 3 of the 1924 statute (see fn. 1), more flexible than those of G. L. c. 40A, § 15, par. 3, continued to apply in Melrose at least until the 1924 statute was repealed and the board was abolished by St. 1971, c. 598, §§ 1, 2 (fn. 3, *supra*).

2.   Even applying § 3 of the 1924 statute to this public project, carried out for a proper public purpose, we are of opinion that the project does not meet the requirements of a variance as set out in § 3.   The power of the board of appeal (see fn. 1) is to "vary . . . [the] enforcement" of the zoning ordinance or to "make special exceptions" to its terms "where such exceptions are reasonably necessary for the public convenience."   This, however, is not to be done where the board's decision will "conflict with the spirit of" the ordinance, but only when the action taken is "in harmony with the [ordinance's] general purpose and intent."   We are of opinion that the construction of this large project on a 40,000 square foot vacant lot in a predominantly residential area is in conflict with the general purpose (see § 25–2) of the zoning ordinance to establish the city as a residence A district except in specified districts where other uses are permitted.   On certiorari, the decision of the board in granting a variance for this project would have been set aside if construction had not proceeded.   The board, in its decision, properly stated that "it would have been more appropriate for the board of aldermen to exempt property of this character." See *Pierce* v. *Wellesley*, 336 Mass. 517, 518–519, 521, 523–524.   This course was not followed.

3.   Merely to set aside the board's decision will not deal with the case adequately, for the project is now completed and occupied.   This is a public or quasi-public enterprise and it would frustrate the public purpose of the large expenditure to order the project demolished.   Such action as a practical matter is unthinkable, and, indeed, the peti-

tioners, in their supplemental brief, do not now ask for such relief, but only for an assessment of damages.

In reviewing action upon a writ of certiorari, only questions of law apparent on the face of the record are before us. In the present unusual circumstances, more flexible relief than is available by certiorari is now necessary. We think the remedy at law is not adequate (see *Kenyon* v. *Chicopee,* 320 Mass. 528, 534; *Mark* v. *Kahn,* 333 Mass. 517, 520; compare *Smith* v. *Board of Appeals of Plymouth,* 340 Mass. 230, 232) and that, despite the decision in the *Fairman* case, there must be resort to appropriate declaratory relief in equity.

4. The order for judgment on the petition for the writ of certiorari is reversed. That proceding and the suit in equity are remanded to the Superior Court, where that bill in equity is to be dismissed. The court shall allow a motion by the petitioners to amend (under G. L. c. 231, § 55, as amended by St. 1935, c. 318, § 6) the petition for a writ of certiorari to a bill in equity for declaratory relief (G. L. c. 231A). A decree is then to be entered declaring (1) that the board of appeal exceeded its authority in granting the variance; (2) that enforcement of the zoning ordinance by demolition or modification of the project is not to be permitted; (3) that jurisdiction of the new suit in the Superior Court is to be retained for eight months from the date of the decree (and for such further time as that court may allow) to permit the board of aldermen to take action to exempt this public project and the locus from the provisions of the Melrose zoning ordinance and (4) that, if such an exemption is not adopted prior to the expiration of such eight month period, as from time to time extended, then the petitioners may request that the court determine the diminution, if any, in the fair market value of their respective properties (as of the date of the completion of the project) and direct that the Authority pay such amounts, with interest, to the petitioners in full satisfaction of their claims and for the acquisition of the permanent easement hereinafter mentioned. As a condition of each such pay-

ment by the Authority, the petitioner to whom it is made shall grant to the Authority a permanent easement in fee, free of all encumbrances, over and affecting the grantor's land (which easement shall be appurtenant to the locus) to maintain the project as against the properties of the several petitioners. The new decree may also declare that all other claims based upon the granting of the variance are to be deemed barred by laches.

*So ordered.*