WALTER J. CASS & others[1] vs. BOARD OF APPEAL OF
FALL RIVER[2] & others.

Bristol. November 26, 1973. — October 3, 1974.

Present: HALE, C.J., ROSE, KEVILLE, GOODMAN, GRANT, & ARMSTRONG, JJ.

*Housing. Zoning,* Variance, Low and moderate income housing.
*Equity Pleading and Practice,* Zoning appeal.

The finding of a board of appeal that there was a shortage in a city
of housing units for large families could not support a finding of
"substantial hardship, financial or otherwise" to a developer
seeking a variance under G. L. c. 40A, § 15, par. 3. [557]

That it was not economically feasible to construct single-family dwell-
ings on the moist soil of land zoned for two-or-three family dwell-
ings was not a "substantial hardship" under G. L. c. 40A, § 15,
par. 3, to a developer seeking a variance for the construction of an
apartment complex on that land. [558]

Evidence that soil, water, and slope characteristics of the land for
which a developer sought a zoning variance to allow construction
of an apartment complex made road construction expensive was
insufficient to show "conditions especially affecting such parcel
but not affecting generally, the zoning district," as required by
G. L. c. 40A, § 15, par. 3. [558]

A shortage of housing units for large families in the city in which a
developer sought a zoning variance to construct an apartment
complex was insufficient to support a finding that the variance
would be without "substantial detriment to the public good,"
where findings of the trial judge did not resolve disputes in the
evidence relating to other relevant factors and did not compare the

---

[1] There are forty-four plaintiffs, including abutters and other
owners of property in the vicinity (see G. L. c. 40A, §§ 17, 21, second
paragraph).

[2] The Fall River zoning ordinance (§ 31-8) designates the planning
board as the "board of appeal." The other defendants are Samuel A.
Miller and Joseph F. Foley, Jr., record owners of the property
involved in this case, and Roland Desmarais, holder of an option on
the property and the applicant for a building permit and variance.

effect of the development as proposed with the effect of the structuring otherwise permitted in the zoning district.  [559-561]

BILL IN EQUITY filed in the Superior Court on July 16, 1971.

The suit was heard by *Frank E. Smith*, J.

*Daniel M. McDonald* for the plaintiffs.

*David Entin* (*Jeffrey S. Entin* with him) for the defendants.

GOODMAN, J.   This bill in equity was brought to annul the decision of the board of appeal of Fall River (the board) granting a variance to allow the construction of an apartment complex on a parcel of land (the locus) zoned to permit no more than three-family residences. The locus is roughly rectangular with the southwest corner excluded.   It is undeveloped and contains about 95,693 square feet.[3]   It is bounded on the west by North Main Street, and its northern boundary runs about 680 feet eastward toward Ling Street.   Its eastern boundary measures about 150 feet.   Parallel to the locus are Dewey Street to the north and Wilson Road to the south.   It appears that the back yards of houses on those streets abut the locus.   The proposed apartment complex is a development of forty-five apartments containing two-, three-, four-, and five-bedroom units, approved and financed by the United States Department of Housing and Urban Development, upon application by the Fall River Housing Authority.   The housing authority has contracted for its construction, and upon completion it is to be turned over to and operated by the authority.

The Superior Court upheld the variance, and the plaintiffs appealed.   The evidence is reported, and the trial judge took a view.   He adopted his voluntary findings as his report of material facts.

---

[3] The area appears from an examination of a 1924 plan (exhibit 59) which indicates that the entire rectangle is about 108,176 square feet and the excluded southwest corner about 12,483 square feet.

Neither the board's decision nor the facts found by the trial court yield an adequate basis for the grant of a variance as required by G. L. c. 40A, § 15, par. 3.[4] The most obvious deficiency in the board's decision is the lack of a finding of "conditions especially affecting such parcel . . . but not affecting generally the zoning district in which it is located," such that "substantial hardship, financial or otherwise to the appellant" is involved. Indeed, the board's only finding of a hardship is "that hardship exists in that there is a shortage of housing units for large families." This is obviously not a "hardship, financial or otherwise to the appellant" seeking a variance before the board — in this case the developer of the parcel. It would serve no useful purpose here to analyze further the board's decision to see whether its findings can somehow be said to include more than approximations of the words of the other requirements of the statute. See *Wolfson* v. *Sun Oil Co.* 357 Mass. 87, 89 (1970). "[A] decision of the board of appeals granting a variance cannot stand unless the board specifically finds that *each* statutory requirement has been met" (emphasis supplied). *Planning Bd. of Springfield* v. *Board of Appeals of Springfield,* 355 Mass. 460, 462 (1969).

---

[4] The provisions of this section, which all parties have regarded as applicable (the difference in the wording of the zoning ordinance does not seem to be significant), have often been reiterated, and it should by now be clear to zoning boards and counsel who guide them that a variance may be granted "where, [1] owing to conditions especially affecting such parcel . . . but not affecting generally the zoning district in which it is located, [2] a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise to the appellant, and [3] where desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law, but not otherwise." See *Planning Bd. of Springfield* v. *Board of Appeals of Springfield,* 355 Mass. 460, 462 (1969).

The findings of the trial judge are also inadequate to sustain the variance.[5] The trial court found that "[t]he composition of the soil in the area is such that only single dwelling [sic] could be built on it. Because of the moist texture of it the cost of an adequate protection against this moisture and other elements would make the cost of a single dwelling prohibitive. A small brook runs through the area with the water sometimes rising to six inches in depth." He also found that "[b]ecause of the texture of the soil it would be practically unfeasible to build single family dwellings on it . . .." However, we have found nothing in the evidence to support the finding that only single family houses can be built on the locus, and neither the finding nor the evidence addresses itself adequately to the feasibility (economic or otherwise) of building two- or three-family houses, which are permitted in the zoning district. For this reason alone, the defendants have not made out a case of hardship before the Superior Court.

---

[5] We follow the practice of the Supreme Judicial Court in examining both the board's decision and the trial judge's findings (see *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 291-292, and other cases cited in *Williams* v. *Building Commr. of Boston,* 1 Mass. App. Ct. 478, 479 [1973]) which he must make de novo on the basis of a hearing. *Smith* v. *Zoning Bd. of Appeals of Scituate,* 347 Mass. 755, 758 (1964). *Planning Bd. of Springfield* v. *Board of Appeals of Springfield,* 355 Mass. 460, 462 (1969). This practice does not absolve the board of its duty to find each of the requirements for a variance in G. L. c. 40A, § 15, par. 3, "setting forth clearly the reason or reasons for its decisions." G. L. c. 40A, § 18. Indeed, we have found no case in which a variance has been sustained in the face of inadequate findings by the board. And in *Allen* v. *Board of Appeals of Fall River,* 351 Mass. 714 (1967), the Supreme Judicial Court summarily sustained the annulment by the Superior Court of a decision of the board granting a variance, because the board "fail[ed] to state the existence of each of the prerequisites to the granting of a variance." The original papers in that case indicate that the board's decision, which was held defective, was cast in practically the same form and language as the decision of the board in this case.

Further, even if the evidence with reference to the building of single family houses could somehow be extrapolated to apply to two- and three-family houses, there still remains the difficulty that the trial judge, like the board, made no finding that the conditions which he enumerated "especially affected" the locus without "affecting generally the zoning district." Nor can we supply this finding. See *Hunt* v. *Milton Sav. Bank, ante,* 133, 138, 139 (1974). There is nothing in the evidence to show that the slope, the brook, and the soil conditions are peculiar to the locus. Indeed, such evidence as there is points the other way. There was further testimony (though the defendants do not refer to it in their brief) which would indicate that the increased expense in preparing the site due to these conditions might be aggravated by the long, narrow shape of the parcel and the requirement of a 600-foot road, 40 feet wide. However, there was testimony indicating that there is other undeveloped land in the area, and there is nothing from which we can infer that the impact of the road requirement would not be substantially the same on other vacant land. *Bicknell Realty Co.* v. *Board of Appeal of Boston,* 330 Mass. 676, 680 (1953). *Zinck* v. *Zoning Bd. of Appeals of Framingham,* 345 Mass. 394, 395 (1963). Contrast *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 292-293 (1972).

Also, the court made no finding that the variance could be issued without "substantial detriment to the public good" and without derogating from the "intent or purpose of the ordinance." While a finding that there was a housing shortage might well support a finding that the variance was not detrimental to the public good (see *Lamarre* v. *Commissioner of Pub. Works of Fall River,* 324 Mass. 542, 545 [1949]; *Broderick* v. *Board of Appeal of Boston,* 361 Mass. 472, 478, 479 [1972]; *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339, 361-363 [1973]), there was a dispute in the evidence as to such

relevant factors as the adequacy of parking facilities, play areas for children, and the effect on property values. *Kairis* v. *Board of Appeal of Cambridge,* 337 Mass. 528, 530, 531 (1958). *Cary* v. *Board of Appeals of Worcester,* 340 Mass. 748, 751-752 (1960). See *Rodenstein* v. *Board of Appeal of Boston,* 337 Mass. 333, 335-336 (1958). Moreover, while the complainants were owners of single family houses, the effect of this development must be compared with the effect of three-family houses permitted in the area on lots of 4,500 feet. We note that the trial judge made a finding that "[t]he forty five units would be separate dwellings in effect apart from each other, but nevertheless under a common roof . . .." However, the development is not described substantially beyond this in the evidence before the court.

A majority of the entire court (Rule 1:18 of the Appeals Court, 1 Mass. App. Ct. 892 [1974]) would annul the decision of the Board without more. The writer of this opinion, joined by Justice Keville, on this record would ordinarily be inclined to the same disposition. However, the writer and Justice Keville consider that there is a possibility that in such event the city of Fall River may lose considerable funds allocated to it by the Department of Housing and Urban Development for low-cost housing, of which the city may be in need. Under the circumstances it is submitted with respect that "[m]erely to set aside the board's decision will not deal with the case adequately." *Kelloway* v. *Board of Appeal of Melrose,* 361 Mass. 249, 254, 256 (1972). Since this was tried, the Supreme Judicial Court has decided *Board of Appeals of Hanover* v. *Housing Appeals Comm. in the Dept. of Community Affairs,* 363 Mass. 339 (1973), which held that G. L. c. 40B, §§ 20-23, inserted by St. 1969, c. 774, § 1, is a "grant of power to boards of appeals . . . to override local zoning ordinances or by-laws [after a hearing to which "the provisions of §. 17 of c. 40A shall apply." G. L. c. 40B, § 21] which would otherwise frustrate the statute's objective of providing for the critical regional

need for low and moderate income housing" (p. 360; see pp. 347, 355; see also *Mahoney* v. *Board of Appeals of Winchester*, 366 Mass. 228, 233 [1974]).[6] The proposed development appears from the decision of the board to be a "'turnkey' program where a private builder constructs the desired housing and then sells or leases it to a housing authority" and would seem to qualify under G. L. c. 40B, §§ 20-23. The *Hanover* case, *supra*, at 368, fn. 20. We note from the decision of the board that the housing authority wrote to it "saying these units are badly needed and requesting approval of the variances"[7] and that the board found that "there is a shortage of housing units for large families." The board should thus be given an opportunity to consider this development under G. L. c. 40B, §§ 20-23, assuming, as appears likely, that the housing authority would appear in the proceeding as an applicant, as it may do under G. L. c. 40B, § 21. The *Hanover* case, *supra*, at 368, fn. 20.

Accordingly, the writer and Justice Keville would reverse the decision of the Superior Court but require that the case be remanded to the board for appropriate action consistent with this opinion including proceedings under G. L. c. 40B, § 21, on such application, if any, as the housing authority or other public agency (G. L. c. 40B, § 20) may choose to file and require further that the Superior Court retain jurisdiction of this case for at least six months before annulling the decision of the board. See *Williams* v. *Building Commr. of Boston*, 1 Mass. App. Ct. 478, 481 (1973). See also *Kelloway* v. *Board of Appeal of Melrose*, 361 Mass. 249, 257 (1972);

---

[6] Such "housing" is defined as "any housing subsidized by the federal or state government under any program to assist the construction of low or moderate income housing as defined in the applicable federal . . . statute." G. L. c. 40B, § 20.

[7] The assistant executive director of the housing authority also testified on behalf of the board of appeal at the hearing in the Superior Court.

*Pioneer Home Sponsors, Inc.* v. *Board of Appeals of Northampton,* 1 Mass. App. Ct. 830, 831 (1973).

In accordance with the view of the majority, the decree of the Superior Court is reversed and a decree is to be entered that the decision of the board of appeal was in excess of its authority and is annulled.

*So ordered.*