DONALD R. GAMACHE & another[1] vs. TOWN OF ACUSHNET
& another[2]
(and a companion case[3]).

Bristol. February 17, 1982. — July 22, 1982.

Present: BROWN, ROSE, & KASS, JJ.

*Zoning*, Board of appeals, Notice, Variance, Nonconforming use, Appeal.
*Practice, Civil*, Declaratory proceeding, Zoning appeal.

Where only four members of a five-member board of appeals were pres-
ent at a hearing on an application for a zoning variance and one of the
four resigned before the board had acted on the application, the board
properly decided to hold a rehearing of the case inasmuch as a decision
by the board required the concurring vote of at least four members.
[217-219]
A defect in notice of a second hearing on an application for a zoning vari-
ance did not prejudice the applicants, where they learned of the hear-
ing through a notice published in a newspaper, found time to prepare
for the hearing, and were represented by counsel at the hearing.
[219-220]
In the circumstances findings made by a board of appeals in denying a
zoning variance for a trailer park were sufficient to support its deci-
sion. [220-221]
A board of appeals was not required to give reasons for its decision to hold
a second hearing on an application for a zoning variance. [221]
Where the evidence on an appeal to the Superior Court established facts
which justified the decision of a zoning board of appeals as to a non-
conforming use, the board's action was held to be within its authority
even though the board's statement did not show that its decision was
based on that evidence. [221-222]
A visit by the chairman of a board of appeals to property for which a
zoning variance was sought and an examination of town tax records
concerning the property did not constitute an improper consideration
of evidence not before the board. [222]

[1] Jacqueline Gamache.

[2] The board of appeals of Acushnet.

[3] Donald R. Gamache & Jacqueline Gamache vs. Town of Acushnet &
the Board of Appeals of Acushnet.

Failure to notify the Attorney General of a proceeding under G. L. c. 231A
    challenging the validity of a zoning by-law precluded a determination
    of the constitutionality of the by-law.  [222-223]
In proceedings under The Zoning Enabling Act seeking a determination
    that a board of appeals had exceeded its authority in denying a vari-
    ance and in finding that there was no nonconforming use of the prop-
    erty in question, this court did not consider a constitutional challenge
    to the validity of the zoning by-law under which the board had acted.
    [223-224]


CIVIL ACTIONS commenced in the Superior Court on Sep-
tember 29, 1977, and October 13, 1977, respectively.

The cases were heard by *Glynn*, J., a Municipal Court
judge sitting under statutory authority.

*Donald J. Fleming* (*Margaret Ishihara* with him) for the
plaintiffs.

*Ferdinand B. Sowa* for the defendants.

KASS, J.  In two consolidated actions the plaintiffs, Don-
ald R. Gamache and Jacqueline Gamache, who have been
denied the use of their 6.19 acre lot as a mobile home park,
have raised issues about: (1) the composition of the board of
appeals of Acushnet, i.e., whether three members of the
board could have rendered a decision; (2) insufficient notice
of a rehearing; (3) inadequate findings in support of the
board's denial of a variance; (4) the invalidity, on constitu-
tional and statutory grounds, of so much of the by-law as
prohibits mobile home parks in Acushnet; and (5) the cor-
rectness of the trial judge's findings as to whether the plain-
tiffs had acquired a nonconforming use.

The event which triggered this barrage of claims on ap-
peal occurred in April, 1973. This was the effective date of
an amendment to the Acushnet zoning by-law which pro-
hibited mobile home parks, for which purpose the Gamaches
had acquired the locus in 1971.[4] There is no dispute that

---

[4] Section 3.4 of the Acushnet "Protective By-Law", as amended in April
of 1973, provided: "Not more than one mobile home or travel trailer may
be kept on any lot. Space shall not be leased for travel trailers or mobile
homes."

when the town amended the zoning by-law there were at least two mobile homes on the Gamache lot, with individual wells and septic systems, and each mobile home was individually taxed. Whether there was a third trailer on site in April, 1973, is disputed. The Gamaches had not, when the zoning law changed, filed a subdivision plan depicting mobile home lots nor had they secured a mobile home park license under G. L. c. 140, § 32F.

1. *Could three members of the board have rendered a decision?*

In 1977, the Gamaches applied for a variance to place seventeen additional mobile homes on their site.[5] Perhaps recognizing the difficulty of obtaining a lawful variance,[6]

---

[5] At the time the application was filed, and throughout all the administrative proceedings, the town had not yet adopted the "new" zoning enabling act inserted by St. 1975, c. 808, § 3. The parties have stipulated that their controversy is governed by the provisions of G. L. c. 40A as it existed before St. 1975, c. 808, § 3. The sections of "old" c. 40A considered in this opinion, notably §§ 14, 15, 17, 18, 19, & 21, all have their analogues in "new" c. 40A.

[6] There is an abundant literature which documents this difficulty. For the proposition that the power to grant variances is sparingly to be exercised, and only under exceptional circumstances, see *Everpure Ice Mfg. Co.* v. *Board of Appeals of Lawrence*, 324 Mass. 433, 439 (1949), and cases cited; *Broderick* v. *Board of Appeals of Boston*, 361 Mass. 472, 479 (1972). For the necessity of demonstrating that all statutory criteria for a variance have been met conjunctively, see *Planning Bd. of Springfield* v. *Board of Appeals of Springfield*, 355 Mass. 460, 462 (1969), and cases cited; *Raia* v. *Board of Appeals of No. Reading*, 4 Mass. App. Ct. 318, 321, further appellate review denied, 370 Mass. 867 (1976); *Boyajian* v. *Board of Appeals of Wellesley*, 6 Mass. App. Ct. 283, 284 (1978). For the proposition that the substantial hardship must affect the locus peculiarly, see *Abbott* v. *Appleton Nursing Home, Inc.*, 355 Mass. 217, 221 (1969); *Garfield* v. *Board of Appeals of Rockport*, 356 Mass. 37, 41 (1969). The hardship may not be merely a personal hardship to the owner. *Dowd* v. *Board of Appeals of Dover*, 5 Mass. App. Ct. 148, 156 (1977). Financial or pecuniary hardship to the owner alone will not establish substantial hardship. *Everpure Ice Mfg. Co.* v. *Board of Appeals of Lawrence, supra* at 438. There is no hardship merely because potential profit may be lost (*Abbott* v. *Appleton Nursing Home, Inc., supra* at 221; *City Council of Waltham* v. *Vinciullo*, 364 Mass. 624, 631 [1974]), or because a need exists for the proposed use. *Cass* v. *Board of Appeal of Fall River*, 2 Mass. App. Ct. 555, 557 (1974). Nor will preliminary construction, expense incurred, or

the Gamaches also asked the board to find that they had made a nonconforming use of their land as a mobile home park and were, therefore, not affected by the amended zoning by-law. They further asked the board to declare that the by-law proscription against mobile homes was beyond the town's zoning power and unconstitutional.

Acushnet has a board of appeals of five members.[7] Only four members were present at the meeting of July 28, 1977, when the Gamache petition came up for public hearing. After that hearing, and before the board acted on the petition, a member of the board resigned. That left three who had heard the case. Cognizant that a five-member board needed the concurring vote of four members to effect action, the board decided that the Gamache matter would have to be reheard before a full panel. That hearing occurred on September 26, 1977, over the vigorous objection of the Gamaches, one of whom, however, was present and represented by counsel. Before the rehearing convened, counsel for the Gamaches had lodged a complaint under G. L. c. 231A, seeking a declaration that the three members who first heard the case should decide it, as well as a declaration that the prohibition of mobile home parks was

the existence of nearby nonconforming uses constitute a hardship. *Raia* v. *Board of Appeals of No. Reading, supra* at 321-322.

[7] General Laws c. 40A, § 14, as amended through St. 1958, c. 202, provided in material part:

"Every zoning ordinance or by-law shall provide for a board of appeals, which may be the existing board of appeals under the local building or planning ordinances or by-laws. The mayor or selectmen shall appoint the members of the board of appeals within three months of the adoption of the ordinance or by-law . . . . Any new board of appeals established hereunder shall consist of at least three members, who shall be appointed by the mayor, subject to the confirmation of the city council, or by the selectmen . . . .

". . . Vacancies shall be filled for unexpired terms in the same manner as in the case of original appointments. Such ordinances or by-laws may provide for the appointment in like manner of associate members of the board of appeals; . . . in the event of a vacancy on said board [the chairman of the board] may designate any . . . associate member to sit . . . until said vacancy is filled . . . ."

beyond the authority of the town. The board proceeded with the second hearing and denied relief to the Gamaches.

The judge who heard the Gamaches' appeal correctly decided that the three remaining members of the board who had heard the testimony could not act on the Gamache petition. In the plaintiffs' view, the resignation of one member of the five-member board worked a metamorphosis of the board into one of not more than four members, three of whom could vote on a matter. There is simply no foundation in the governing statute, G. L. c. 40A, § 19, inserted by St. 1955, c. 349, for this proposition. The statute is quite express that five-member boards can effect action only by a vote of four members and boards of four members or less must act unanimously. Moreover, the town, by § 5.2 of its protective by-law, had established a board of appeals of five members, and a temporary vacancy did not alter the by-law. It continued to be a board of five members and a decision by the board required the concurring vote of at least four members. Accordingly, the board acted properly in reserving action until at least four members could rehear the case.

2. *Sufficiency of notice of the second hearing.* The plaintiffs argue — but do not seriously press — that they did not receive reasonable notice of the second hearing, conformably with G. L. c. 40A, § 17, as amended through St. 1973, c. 296, § 2. It is enough to say that they learned of the hearing because of a published newspaper notice; one of them appeared at the hearing with counsel; and counsel at the hearing represented that he had managed to file an action with the Superior Court protesting the rehearing before it began. There was a defect in notice, but it caused no prejudice. See *Clancy* v. *Wallace*, 288 Mass. 557, 564 (1934); *Pitman* v. *Medford*, 312 Mass. 618, 623 (1942). The plaintiffs found time to prepare for the hearing. See *Kasper* v. *Board of Appeals of Watertown*, 3 Mass. App. Ct. 251, 257-258 (1975); *Ranney* v. *Board of Appeals of Nantucket*, 11 Mass. App. Ct. 112, 114-115 (1981), further appellate review denied sub nom. *Ranney* v. *Waine*, 383 Mass. 890

(1981). Compare *Rousseau* v. *Building Inspector of Framingham*, 349 Mass. 31, 37 (1965).

3. *Adequacy of the board's findings.* While the requirements for findings which support the grant of a variance or special permit are rigorous,[8] less is necessary when relief is refused. *Cefalo* v. *Board of Appeal of Boston*, 332 Mass. 178, 181 (1955). *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. 158, 162 (1962). In the instant case the board based its decision on the policy against trailer parks expressed in § 3.4 of the town by-law. To be sure, this is the provision which the Gamaches wanted the board to vary, but the board's stated reason may be taken as an expression that it considered a variance from § 3.4 to derogate from the intent and purpose of the zoning by-law. See G. L. c. 40A, § 15, as amended through St. 1958, c. 381. See *Planning Bd. of Framingham* v. *Gargiulo*, 11 Mass. App. Ct. 958 (1981). That was sufficient explanation for denial of a variance, especially on a record which falls well short of establishing facts which would have authorized the board to grant a variance. See *Ferrante* v. *Board of Appeals of Northampton*, 345 Mass. at 162. See also *Hunters Brook Realty Corp.* v. *Zoning Bd. of Appeals of Bourne, ante* 76, 78 n.5, 84 (1982). We are not confronted with a case where denial was based solely upon a legally untenable ground. Nor was the denial whimsical, capricious or arbitrary. *Bottomley* v. *Board of Appeals of Yarmouth*, 354 Mass. 474, 476-477 (1968).[9] There is, of course, no legal right to a

---

[8] *Planning Bd. of Springfield* v. *Board of Appeals of Springfield*, 355 Mass. 460, 462 (1969). *Wolfson* v. *Sun Oil Co.*, 357 Mass. 87, 89 (1970). *Cass* v. *Board of Appeal of Fall River*, 2 Mass. App. Ct. 555, 557 (1974).

[9] The board gave as an additional ground for denying relief that the Gamaches lacked a license to operate a mobile home park. See G. L. c. 140, §§ 32A-32Q, inclusive. Want of a license is not an appropriate ground for denying zoning relief since the criteria for licensure may be quite independent of the land use considerations of zoning. Administrative steps must begin somewhere and an agency cannot, unless a statute so provides, decline to decide a matter brought before it simply because another agency has yet to act. See *Selectmen of Wrentham* v. *Monson*, 355 Mass. 715, 716-717 (1969).

variance. *Rose* v. *Board of Appeals of Wrentham*, 352 Mass. 301, 303 (1967). *Selectmen of Ayer* v. *Planning Bd. of Ayer*, 3 Mass. App. Ct. 545, 548 (1975).

So far as the convening of a second hearing was concerned, we do not think that the duty of boards of appeals under G. L. c. 40A, § 18, as amended through St. 1971, c. 1018, to set forth the reasons for its decisions and official actions extends to explaining each event in the procedure. It is sufficient if a record shows, as it did here, that a public meeting was adjourned and a subsequent one held.

The board had relatively little to say about the plaintiffs' claim that they had acquired a nonconforming use as a mobile home park. It based its decision in part on the Gamaches' failure (adverted to in note 9, *supra*) to possess a mobile home park license. This was some evidence that no mobile home park was operating. Compare *Selectmen of Wrentham* v. *Monson*, 355 Mass. 715, 717-718 (1969). The trial judge made an express finding that the nonconforming use asserted by the Gamaches did not exist. That finding had support in the record, which disclosed that no plan of a mobile home park had been filed; those homes had individual wells and septic systems; and each mobile home was individually taxed. Where the evidence establishes facts which justify the decision of the board on a nonconforming use issue, its action will be held to be within its authority although its decision was not, so far as anything said by the board, based on that evidence. *Parrish* v. *Board of Appeal of Sharon*, 351 Mass. 561, 568 (1967). See *S. Volpe & Co.* v. *Board of Appeals of Wareham*, 4 Mass. App. Ct. 357, 359-360 (1976), which makes the same point in the context of special permits. Even had the Gamaches established the existence of three trailers on the site, a change to a park of nineteen mobile homes on the same land would be an enlargement of nonconforming activity so great as to be different in kind in its effect on the neighborhood. *Medford* v. *Marinucci Bros.*, 344 Mass. 50, 60 (1962). *Brady* v. *Board of Appeals of Westport*, 348 Mass. 515, 523 (1965). See *Powers* v. *Building Inspector of Barnstable*, 363 Mass. 648, 653-658 (1973); *Selectmen*

*of Blackstone* v. *Tellestone*, 4 Mass. App. Ct. 311, 313-314 (1976).

The Gamaches also attack the board's findings on the ground that the chairman of the board improperly considered evidence not before it because before the rehearing the board's chairman visited the locus and examined town tax records concerning the locus. As to the site visit, it is a common practice for members of boards of appeals to look over property as to which they are to make a zoning decision. 3 Anderson, American Law of Zoning § 20.38 (2d ed. 1977). Zoning is a local matter and courts assume a board of appeals is familiar with local conditions. *Pendergast* v. *Board of Appeals of Barnstable*, 331 Mass. 555, 557 (1954). One of the ways to achieve this familiarity is by looking at the land in question. As to the tax record of the property, this again is a matter of local information available for public inspection. The knowledge gained from the tax records, that no tax for a mobile home park had been collected with respect to the locus from the Gamaches, was set forth in the minutes of the rehearing. See Anderson, *supra* § 20.39.

4. *Challenge to the validity of the by-law.* In both of their actions, i.e., the complaint for a declaratory judgment and the appeal of the board's decision under G. L. c. 40A, § 21, as amended by St. 1974, c. 78, § 1, the plaintiffs urge that the total prohibition of mobile home parks has no rational foundation and is, therefore, unconstitutional or beyond the authority of the town under G. L. c. 40A. Without intimating that there is any merit in those contentions, we decline to reach them because each challenge to the validity of the by-law fails procedurally.

(a) *The declaratory judgment action.* Owners of land may seek a determination of the validity of zoning regulations through the declaratory procedures contained in G. L. c. 231A if an actual controversy exists. *Woods* v. *Newton*, 349 Mass. 373, 376-378 (1965). See *Rayco Inv. Corp.* v. *Selectmen of Raynham*, 368 Mass. 385, 386 (1975). Contrast *Sisters of the Holy Cross* v. *Brookline*, 347 Mass. 486, 490-492 (1964), which now stands for the proposition that judi-

cial review of the validity of a zoning regulation in the Land Court under G. L. c. 185, § 1(j½), and G. L. c. 240, § 14A, is the exclusive remedy for landowners only where there is no actual controversy.  *Woods* v. *Newton*, 349 Mass. at 376-377.  If the party seeks to involve a question of constitutionality in the declaratory judgment proceeding, "the attorney general shall also be notified of the proceeding." G. L. c. 231A, § 8, inserted by St. 1945, c. 582, § 1. Nothing in the record suggests that the Gamaches notified the Attorney General.  The constitutional challenge to the by-law, therefore, falls out of the case. *Court St. Parking Co.* v. *Boston*, 336 Mass. 224, 226, appeal dismissed sub nom. *Rosengard* v. *Boston*, 355 U.S. 272 (1957). *Springfield Preservation Trust, Inc.* v. *Roman Catholic Bishop*, 7 Mass. App. Ct. 895 (1979). See *Woods* v. *Newton, supra* at 380 n.4.

(b) *The appeal from denial of the variance.*  In this action the attack on the restrictive by-law is that it "is beyond the zoning authority of the Town of Acushnet."  The underlying action is an appeal under G. L. c. 40A, § 21,[10] from the decision of the board adverse to the Gamaches.  A board of appeal is not a proper forum for raising questions as to the validity of a municipal zoning regulation because the powers of such a board "do not include the power to nullify acts of the local legislative body . . . ." *Bearce* v. *Zoning Bd. of Appeals of Brockton*, 351 Mass. 316, 319 (1966).  On appeal in the Superior Court, it follows that the board could not be taxed with having failed to make a determination of invalidity which it lacked the power to make.

We are not unmindful of cases antedating *Bearce* in which the validity of a zoning by-law or ordinance was reviewed by a court in the context of an appeal under G. L. c. 40A, § 21.  See e.g., *Gem Properties, Inc.* v. *Board of Appeals of Milton*, 341 Mass. 99, 105 (1960); *O'Connell* v. *Brockton Bd. of Appeals*, 344 Mass. 208, 209-212 (1962).  Cf. *Cross* v. *Planning Bd. of Chelmsford*, 345 Mass. 618 (1963), in which

---

[10] The parallel appeal provisions are now found in G. L. c. 40A, § 17, of the "new" zoning enabling act.

the court determined the invalidity of a zoning by-law in the context of an appeal under G. L. c. 41, § 81BB, from a disapproval of a subdivision plan by a planning board. We find implicit recognition, consistent with *Bearce*, of the exclusion of questions of the validity of zoning regulations from proceedings under G. L. c. 40A, § 21, in *Hallenborg v. Town Clerk of Billerica*, 360 Mass. 513, 516-517 n.4 (1971), *M. DeMatteo Constr. Co. v. Board of Appeals of Hingham*, 3 Mass. App. Ct. 446, 455-456 n.10 (1975), and Healy, Massachusetts Zoning Practice Under the Amended Zoning Enabling Act, 64 Mass. L. Rev. 157, 163 (1979). See also *Neuhaus v. Building Inspector of Marlborough*, 11 Mass. App. Ct. 230, 231 n.5 (1981), in which we left undecided whether the validity of a zoning ordinance or by-law is to be raised under the "new" zoning enabling act pursuant to G. L. c. 40A, §§ 7, 8 and 17, as appearing in St. 1975, c. 808, § 3. As we observed in the *M. DeMatteo Constr. Co.* case, *supra* at n.10, under the rules of civil procedure it is a simple enough matter to add to a complaint seeking review of a decision of a board of appeals allegations concerning the validity of the zoning regulation in question and a prayer for a declaration as to its validity.

The judgments are substantively correct. In the case of the declaratory judgment action, the judgment, however, should not be in the form of a dismissal of the action, but is to be modified so as to declare that: the board acted within its authority in convening a second hearing so that it might act by at least four members; the notice of the second hearing was sufficient; and no nonconforming use existed. See *MacKeen v. Canton*, 379 Mass. 514, 516 n.3 (1980). The judgment in the appeal under G. L. c. 40A, § 21, is affirmed.

*So ordered.*