ANDREW JACK, individually and as trustee, & others[1] vs.
BOARD OF APPEAL OF BOSTON & another.[2]

Suffolk.  December 13, 1982. — February 15, 1983.

Present: HALE, C.J., CUTTER, & SMITH, JJ.

*Practice, Civil,* Zoning appeal, Bond.  *Zoning,* Appeal, Bond.

On appeal from a decision of the board of appeal of Boston, the judge
    hearing a motion to require the plaintiffs to file a bond did not abuse
    his discretion in deciding to postpone, until the trial on the merits, con-
    sideration of issues concerning the adequacy of the notice given to the
    plaintiffs of the hearing before the board.  [313-315]
On appeal from a decision of the board of appeal of Boston by a condo-
    minium trust and two owners of units in the condominium, the judge
    hearing a motion to require the plaintiffs to file a bond was warranted
    in concluding that the plaintiffs' case was not strong, that the trust
    could not claim that it was, in effect, indigent in the absence of evi-
    dence that the condominium unit owners were without funds, and
    that delay would cause significant losses to the defendant developer,
    and was warranted in requiring a bond in the amount of $50,000.
    [315-317]
The judge determining the amount of the bond to be filed by the plaintiffs
    on appeal from a decision of the board of appeal of Boston did not
    abuse his discretion in denying the plaintiffs' motion for an evidentiary
    hearing.  [317-318]

CIVIL ACTION commenced in the Superior Court Depart-
ment on May 26, 1981.

After the allowance of a motion for the filing of a bond, a
motion to dismiss was heard by *Meyer,* J.

[1] Jack is owner of a unit in Reservoir Gardens Condominium situated at
1982 Commonwealth Avenue in Boston as well as managing trustee of
that condominium's trust.  Patricia Wright, also a unit owner, was added
as a plaintiff by an amended complaint filed July 30, 1981.

[2] Mr. Jerome Rappaport.

*Alanna G. Cline* for Reservoir Gardens Condominium Trust & another.

*Andrea Mintz* for Patricia Wright.

*Robert Muldoon, Jr.,* for Jerome Rappaport.

*William H. Smith,* Corporation Counsel, for Board of Appeal of Boston, joined in a brief.

*Andrew Stockwell-Alpert,* for Brighton-Allston Condominium Owners Association, amicus curiae, submitted a brief.

CUTTER, J. The board of appeal of Boston (the board, see St. 1956, c. 665, §§ 8 & 9) granted, with respect to property at 2000 Commonwealth Avenue in the Brighton district of Boston, three zoning variances to a defendant, Mr. Jerome Rappaport (the developer), an attorney engaged in land development. The developer had sought the variances in order to construct a sixteen-story apartment house on a parcel of some 29,000 square feet (the locus), adjacent to the land at 1982 Commonwealth Avenue owned by the Reservoir Gardens Condominium Trust (the Condominium). There had previously been on the locus a somewhat larger apartment building (than that now proposed) which had collapsed at least a decade before this case began. The earlier building's foundation still contains rubble from the collapse of that building.

This proceeding was brought in the Superior Court under St. 1956, c. 665, § 11, seeking annulment of the three variances. On December 16, 1981, upon the developer's motion assented to by the board, the plaintiffs were ordered to furnish a bond of $50,000 before a date later extended to February 1, 1982. See St. 1956, c. 665, § 11, which provides that every person appealing from a decision of the board "shall file a bond with sufficient surety, to be approved by the court, *for such sum as shall be fixed by the court,* to indemnify and save harmless the person or persons in whose favor the decision was rendered from all damages and costs which he or they may sustain in case the decision of said board is affirmed" (emphasis supplied). In his decision of December 16, the judge, after discussion of prece-

dents interpreting § 11, made a detailed review of (a) the merits of the plaintiffs' claim, (b) the extent of their resources, and (c) the extent of the possible harm to the developer if a bond should not be furnished. He concluded that the board's decision "appears to contain adequate findings to justify the granting of a variance," that "the plaintiffs do not have a strong case," and that the developer may suffer "substantial loss" because of the delay caused by the appeal.

On January 7, 1982, the judge denied (a) the plaintiffs' motion for an evidentiary hearing (previously sought also by the developer in his motion to require a bond), and (b) their motion to reduce the bond because of their alleged lack of assets. The trial judge extended to February 3 and later to February 19, 1982, the time for dismissal of the action for failure to file the bond before February 1, 1982.

On February 2, 1982, all the plaintiffs filed in this court an interlocutory application to a single justice (see G. L. c. 231, § 118) for a stay of the proposed judgment of dismissal. The developer, after hearing, agreed to accept a bond in the amount of $30,000 (rather than one of $50,000). The plaintiffs were afforded until March 1, 1982, to file such a bond. When the plaintiffs failed to do so, the petition for relief under § 118 was dismissed.

Judgment of dismissal of the action was entered on March 11, 1982. Appeals were then claimed by the then attorney for all the plaintiffs.

1. In his order of December 16, 1981, requiring a bond, the trial judge stated that the plaintiffs had raised in their complaint the issue whether the board "gave the abutters proper notice of the public hearing" before the board, and ruled that this "issue does not affect the question of a bond and will be fully heard during the trial on the merits." The bond requirement of § 11 is designed "to discourage frivolous and vexatious appeals from the decisions of the Boston board, a condition which might not be found in comparable degree in other counties." *McNeely* v. *Board of Appeal of Boston*, 358 Mass. 94, 110 (1970). The power to require such

a bond ceases "when there has been a judicial determination of the case . . . in the Superior Court." *Ibid.* See *Broderick v. Board of Appeal of Boston,* 361 Mass. 472, 474-480 (1972). The purpose of the statute thus is obviously to afford bond protection to the holder of a variance immediately upon the filing of the appeal and before determination of the merits, which of course involves a possibly time-consuming trial de novo in the Superior Court of the issues already decided by the board. See *Josephs* v. *Board of Appeals of Brookline,* 362 Mass. 290, 292, 295 (1972).[3]

The judge (as a matter of efficient judicial administration of a matter in which uncertainty and delay might be costly) upon discovering the plaintiffs' contention that the Condominium and many of its unit holders had not been given notice of the board proceedings might well have found the facts about notice and remanded the case to the board promptly. His order could have instructed the board to give all conceivably appropriate notices, to conduct a new hearing, and (after considering the evidence then adduced) either to make a new decision or to ratify and to confirm the old one. The judge did not adopt this course but proceeded under § 11 to fix the amount of the bond on the basis of the situation as he then appraised it.

We think, in the circumstances, that it was within the discretion of the trial judge to postpone to the trial on the merits consideration of issues (some of which were likely to be complicated) concerning the adequacy of the notice of the hearing before the board. The circumstances mentioned in the margin[4] raised questions concerning whether the

---

[3] After a trial de novo on the merits, it would have been the duty of the trial judge to reach the conclusions deemed by him to be correct after giving fair consideration to all the evidence brought to his attention. The circumstance that, as a preliminary step in fixing the amount of the bond required by St. 1956, c. 665, § 11, he had reached the conclusion that the plaintiffs' case was not strong, would not have precluded him from annulling the board's decision if the evidence at trial led him to the conclusion that it was beyond the board's authority or that there had been prejudicial disregard of statutory requirements of notice.

[4] The board had asserted in its answer (without contradiction by affidavit) that the attorney appearing for the Condominium was the person

Condominium and its attorney and the other plaintiffs in fact had suffered prejudice from the lack of notice. See *Kasper* v. *Board of Appeals of Watertown,* 3 Mass. App. Ct. 251, 253-258 (1975). See also *Ranney* v. *Board of Appeals of Nantucket,* 11 Mass. App. Ct. 112, 114-115 (1981); *Gamache* v. *Acushnet,* 14 Mass. App. Ct. 215, 219-220 (1982). On a record which contained no affidavit or other proof of prejudice from want of notice, the trial judge could reasonably have concluded that this issue (together with whatever uncertainties[5] may have existed as to the necessity of notice of board hearings to condominium unit holders) should be left for determination at trial, rather than at a preliminary hearing concerning the amount of the bond.

2. The judge had clearly in mind the considerations which had been listed in *Damaskos* v. *Board of Appeal of Boston,* 359 Mass. 55, 61-64 (1971), as appropriately to be taken into account by a judge in fixing the amount of the bond under § 11. See the discussion of analogous bond requirements in *Schlager* v. *Board of Appeal of Boston,* 9 Mass. App. Ct. 72, 75-79 (1980). Compare the somewhat different situation in *Gugino* v. *Harvard Community Health Plan,* 380 Mass. 464, 468-469 (1980). The judge considered "the merits of the appeal" in detail, and determined that the board had in its decision taken into account all the statutory prerequisites to a variance. He took special note of the circumstance that the board had "found that because a collapsed building rests on the site, expensive excavation would be required before any construction could begin" and also "that the subsurface conditions of the site

---

in whose care (although her name had been spelled incorrectly) notice to the Condominium of the board's hearings had been sent. She had been present at the hearing before the board. The plaintiff Jack (sent no notice of the hearings) had been present before the board. The plaintiff Patricia Wright, although not mailed a notice of the hearings, had shown knowledge of the developer's application for variances by submitting to the board her written objections.

[5] On our view of this case we have no occasion to resolve these uncertainties.

. . . [were] unique in the zoning district." On the record then before him, we cannot say that his conclusion, for the limited purpose (see note 3, *supra*) of fixing the amount of the bond, about the lack of strength of the plaintiffs' case, was unwarranted.

The judge then proceeded to balance the "availability of [the plaintiff's] resources . . . against the potential harm to the defendant [developer] caused by the appeal." He recognized in explicit terms that "resources and ability to pay a bond should be considered." The [C]ondominium's contention that the trust had no assets, he found "lacks persuasiveness." He gave weight to the fact that, "on behalf of the Condominium owners, the [t]rust undertook this judicial review" and ruled that in the absence of evidence that the aggrieved "property owners . . . have no funds, the [t]rust cannot claim that it is, in effect, indigent." He pointed out that the *Damaskos* case did not state that no bond need be provided if the plaintiff cannot afford one. The Condominium trust instrument was before him. Despite the plaintiffs' difficulties in obtaining a bond, and the lack of readily available resources of the trust itself mentioned in motions, affidavits, and documents before him, the trial judge could reasonably interpret the trust instrument (see, e.g., arts. 5.1.16; 5.4.3; 5.1.4) as affording to the trustees of the Condominium trust substantial potential assets, when the instrument is read in connection with the provisions of G. L. c. 183A, especially § 10(*b*)(4), inserted by St. 1963, c. 493, § 1. There plain authority is given to the trustees to "conduct litigation . . . as to any course of action involving the common areas and facilities" and to treat the "expenses incurred in" so doing as "common expenses." [6] Certainly, the trust as an abutter could conduct litigation to protect the rights of the Condominium in its common areas, which include (see c. 183A, § 1 [inserted by St. 1963, c. 493, § 1],

---

[6] By art. 3.8 of the trust instrument, the trustees are afforded ample powers to obtain indemnification and to enforce against unit holders liability for their respective shares of common expenses. By art. 5.1.4, the trustees have broad powers to borrow money.

definitions of "Common areas and facilities" and "Common expenses") the locus on which the Condominium stands, its elevators, and other installations. The judge reasonably could reject the unduly narrow concept of trust assets advanced by the plaintiffs.

3. The trial judge had before him, in addition to his general knowledge of inflation in the community, an affidavit from an architect that a one-year delay in the construction on the locus probably would result in a 4.8% increase in the costs of the structure or about $576,000. Since the date of that affidavit, there has already been a delay of well over a year during which the developer has not had the protection of the bond contemplated by § 11 of the Boston zoning statute. The judge, although recognizing that the architect's estimate of loss was "highly speculative considering the vagaries of the real estate market," was fully justified in concluding that delay would cause significant losses to the developer. He also by setting a figure for the bond of $50,000 acted in a manner consistent with the general reluctance of courts to require "extremely high bond amounts." See the *Damaskos* case, 359 Mass. at 64; *Playboy of Boston, Inc.* v. *Board of Appeal of Boston,* 359 Mass. 66 (1971).

4. The trial judge, by his careful attempts to appraise the merits of the plaintiffs' objections to the variances in effect has considered in some degree the issue of the potential harm to the plaintiffs from sustaining the variances, an issue implicit in the discussion in the *Damaskos* case, 359 Mass. at 64. He obviously has attempted to set a bond amount consistent with the principles discussed in that case, and even that amount was reduced upon review by the single justice. We think that, for purposes of the preliminary determination of the amount of the bond prior to the trial de novo, he was not required to do more.

The judge had been furnished with a lengthy and verbose appraisal of the damage to the Condominium which would be likely to result from the construction of the proposed building on the locus. He was not required to accept the conclusions of the appraisal. Although he appropriately

could have granted an evidentiary hearing, as an aid to his application of the appropriate equitable principles, see the *Damaskos* case at 64 n.9, whether to do so was a matter within his discretion. We cannot say that his discretion was abused.

*Judgment affirmed.*