SHREWSBURY EDGEMERE ASSOCIATES LIMITED
PARTNERSHIP & others[1] *vs.* BOARD OF APPEALS OF
SHREWSBURY.

Suffolk. November 8, 1990. - February 5, 1991.

Present: LIACOS, C.J., WILKINS, ABRAMS, LYNCH, & GREANEY, JJ.

*Zoning,* Nonconforming use or structure; Special permit; Drive-in theater;
Board of appeals: decision.

A use of property which existed prior to the adoption of a town's zoning
by-law, and which would require a special permit under the by-law
were it not preexisting, qualified as a nonconforming use for purposes of
G. L. c. 40A, § 6, governing extension or alteration of nonconforming
uses. [319-321]
A town had authority, under G. L. c. 40A, to prescribe that an application
to alter or extend a nonconforming use be treated as a special permit
application under c. 40A, § 9, subject to the requirement of a four-
fifths favorable vote of the town's board of appeals, as well as other
procedures of § 9; however, since it was not clear that the board of
appeals applied the "not . . . substantially more detrimental" standard
appropriate to a developer's request for alteration of a nonconforming
use, the matter was to be remanded to the board for further proceed-
ings. [321-324]

CIVIL ACTION commenced in the Land Court Department
on October 10, 1988.

The case was heard by *Marilyn M. Sullivan,* J., on mo-
tions for summary judgment.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*T. Philip Leader* for Board of Appeals of Shrewsbury.

---

[1]Edgemere Liquidations Trust and Shrewsbury Condominium Asso-
ciates Limited Partnership (collectively, developer).

*Catherine J. Lefebvre* (*Erik Lund* with her) for the plaintiffs.

LYNCH, J. This case raises the following questions concerning construction of G. L. c. 40A (1988 ed.), The Zoning Act, and the zoning by-law of the town of Shrewsbury: (1) whether a use of property which existed prior to the enactment of the zoning by-law, and which would require a special permit under the by-law were it not preexisting, qualifies as a "nonconforming" use for purposes of G. L. c. 40A, § 6, governing extension or alteration of nonconforming uses; and (2) whether a town has authority, under G. L. c. 40A, to require that an application to alter or extend a nonconforming use be treated as a special permit application under G. L. c. 40A, § 9, and therefore that it must be approved by vote of a super majority.

A drive-in theater has been operated at the site in question since before the by-law was enacted. The site is located in the commercial-business district. Under § VI G 2 of the by-law, a special permit is required for operation of a drive-in theater in the commercial-business district. The developer seeks to convert the drive-in theater site for use as a water amusement park. Section IV B of the by-law requires a special permit in order to change, alter, or expand a prior nonconforming use. Section IX C of the by-law empowers the zoning board of appeals (board) to decide applications for special permits "as provided in Section 9 of Chapter 40A."[2] The developer applied to the five-member board for a special permit to alter a nonconforming use. The board voted three

---

[2]Section IV B provides in pertinent part: "Upon the issuance of a Special Permit by the Board of Appeals as provided in Section IX, non-conforming uses, buildings or structures may be altered, reconstructed, expanded, enlarged or changed provided that: . . . 4. Any such change, alteration, reconstruction, expansion or enlargement may be permitted only upon the finding by the Board of Appeals that such change, alteration, reconstruction, expansion or enlargement is not substantially more detrimental to the neighborhood or public welfare."

Section IX C provides in pertinent part: "*Powers of Board of Appeals* . . . 3. To hear and decide applications for special permits as provided in Section 9 of Chapter 40A."

to two in favor of the developer's application, but denied the special permit on the ground that, under G. L. c. 40A, § 9, as it is incorporated into the by-law, a four-fifths vote was required to grant a special permit.

The developer appealed to the Land Court. A judge in the Land Court granted the second of two motions of the developer for summary judgment, ruling that "a use permitted as of right prior to the adoption or subsequent amendment of a by-law and thereafter only by a special permit constitutes a non conforming use." The judge also ruled that a "finding" under G. L. c. 40A, § 6, regarding alteration or extension of a nonconforming use requires only a majority vote, and that the town of Shrewsbury cannot impose a requirement of a super majority "by couching permission in terms of a special permit."[3] The board appealed, and we transferred the case here on our own motion. We agree with the first ruling, but disagree with the second. We vacate the judgment below and, because the record does not clearly demonstrate that the board applied the correct standard in denying the developer's application, we remand the case to the board for further proceedings.

1. General Laws c. 40A, § 6, contains the statutory requirement that uses of property which existed prior to the adoption of ordinances or by-laws, so-called nonconforming uses, be permitted to continue as of right after their adoption. The town argues that a use which preexisted the zoning by-law is not a nonconforming use, but rather is a "permitted" use, when it would be permitted under that by-law upon the issuance of a special permit. The flaw in this argument is that such a use is not permitted unless the special permit is

---

[3]The board's claim that the developer has not sustained its burden of proving that the drive-in theater is a nonconforming use because it did not set forth facts to that effect *by affidavit*, is inapposite. The decision of the board, as well as depositions of two board members submitted by the developer, shows that all members of the board agreed that the use of the site as a drive-in theater was established prior to adoption of the current zoning by-law, that such use is permitted by special permit only under the by-law, and that the drive-in lacks a special permit.

granted. As the judge of the Land Court recognized, since not all applicants may be successful in obtaining a special permit, there is an essential distinction between a use permitted as of right and one subject to a special permit.[4] Moreover, § 6 clearly provides that the zoning ordinance or by-law shall not apply to uses lawfully in existence before the zoning process has begun. It is illogical to contend, as the town does, that the preexisting use here is not a nonconforming use because it would have been permitted by special permit, had it been required to apply for one.

The legislative history supports our view of the distinction between nonconforming uses and special permit uses. The 1975 revision of the Zoning Enabling Act, St. 1975, c. 808, § 3, resulted from a report to the Legislature by the Department of Community Affairs, which recommended a number of changes. See 1972 House Doc. No. 5009, Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act (report). That report specifically recognized this distinction between uses which may be allowed by special permit and nonconforming uses. The report, *supra* at 33, noted that:

> "there is increasing awareness that the assumption it is desirable to eliminate non-conforming uses may not always be valid. The neighborhood grocery store, for example, may serve a highly useful function and in many cases *would probably be located by special permit if it did not already exist as a non-conforming use.* Thus, in some situations it is in the best interests of the community to encourage rather than discourage the continuation of the non-conforming use, *particularly if it can be subjected to the same types of regulation which would be applicable if it were originally located by special permit*" (emphasis added).

---

[4] *Mendes* v. *Board of Appeals of Barnstable*, 28 Mass. App. Ct. 527, 531 (1990), noted that the standard for granting special permits is more flexible than that for variances. It has no bearing on this point, contrary to the board's oral argument.

The Appeals Court has also explicitly recognized that a prior use is nonconforming where it predated the requirement of a special permit for that use. See *Green* v. *Board of Appeals of Provincetown*, 26 Mass. App. Ct. 469, 470 n.3 (1988), *S.C.*, 404 Mass. 571 (1989). We conclude that the drive-in theater at issue in this case is a nonconforming use, subject to § 6, even if it would have been allowed by special permit had it commenced after the enactment of the Shrewsbury zoning by-law.

2. General Laws c. 40A, § 6, provides that extension or alteration of a nonconforming use shall be permitted if "there is a finding *by the permit granting authority or by the special permit granting authority designated by ordinance or by-law*" that such extension or alteration will not be "substantially more detrimental than the existing nonconforming use to the neighborhood." The developer claims that this provision allows a town to choose only the authority, but not the procedure, by which a § 6 "finding" may be issued and therefore that the special permit requirement of a four-fifths vote cannot be imposed on requests to change nonconforming uses. Ordinarily, in the absence of a contrary statutory provision, a simple majority of a collective body is empowered to act for that body. See *Clark* v. *City Council of Waltham*, 328 Mass. 40, 41 (1951); G. L. c. 4, § 6, Fifth. The developer claims that § 6, therefore, does not authorize the special permit granting authority, if chosen, to make a § 6 finding by other than a simple majority vote. We disagree.

General Laws c. 40A, § 1A, differentiates between the permit granting authority and the special permit granting authority under the zoning by-law, the principal distinction being that the latter is the authority that issues special permits. General Laws c. 40A, § 9, provides that approval of an application for a special permit requires four votes of a five-member board. The statute does not require that permit granting authorities always act by super majority. It follows, therefore, that by authorizing the municipality to choose the special permit granting authority, when it does so, that body uses the procedure which defines it. We conclude that G. L.

c. 40A, § 6, authorizes, but does not require, a municipality to choose a special permit application as the procedure for extension or alteration of a nonconforming use.

In reviewing for other purposes a section of a local zoning by-law that, like § IV of the Shrewsbury by-law, required a special permit for changes in preexisting nonconforming uses, we "observe[d] . . . that *G. L. c. 40A, § 6, authorizes the granting of special permits for changes in existing structures* and that [the section] of the by-law mirrors this provision" (emphasis added). *Walker v. Board of Appeals of Harwich,* 388 Mass. 42, 51 (1983). The Appeals Court has also assumed that a special permit procedure may be used, in cases where local zoning by-laws require special permits for the extension or alteration of nonconforming uses. See, e.g., *Nichols v. Board of Zoning Appeals of Cambridge,* 26 Mass. App. Ct. 631 (1988); *Willard v. Board of Appeals of Orleans,* 25 Mass. App. Ct. 15 (1987); *Tamerlane Realty Trust v. Board of Appeals of Provincetown,* 23 Mass. App. Ct. 450 (1987); *Fitzsimonds v. Board of Appeals of Chatham,* 21 Mass. App. Ct. 53 (1985).

We agree with the board that there is no reason to think the Legislature intended special permits issued for changes in nonconforming uses to be less stringently dispensed than any other type of special permit. Prior to the 1975 amendment, the Zoning Enabling Act allowed a town to forbid any changes in nonconforming uses, and required a unanimous vote by a zoning board of appeals to decide in favor of any application under any zoning ordinance or by-law. See St. 1954, c. 368, §§ 5 and 19. As we read the statute, the Legislature has liberalized these rules to permit a town to require the same number of affirmative votes to grant applications for the alteration of a nonconforming use as to grant any other special permit, or to delegate the chore to the permit granting authority which would permit approval by a simple majority.

The developer claims that imposing the special permit procedure on a nonconforming use change is contrary to the purpose of special permits, set out in § 9: "Zoning ordinances

409 Mass. 317                                                323

Shrewsbury Edgemere Associates Ltd. Partnership *v.* Board of Appeals of Shrewsbury.

or by-laws shall provide for *specific types of uses* which shall only be permitted in specified districts upon the issuance of a special permit" (emphasis added).[5] This view is supported, claims the developer, by the fact that change of a nonconforming use is not included in the list of specific purposes in § 9 for which special permits may be used. We disagree. Although the list of special permit uses is extensive, the first sentence introducing the list makes clear that the list is in addition to the more general statement of purpose in the first paragraph. It states: "Zoning ordinances or by-laws may *also* provide for special permits authorizing [uses listed below]" (emphasis added). Furthermore, the specific reference to alteration of nonconforming uses by special permit in § 6 provides specific statutory authorization for the procedure. That a different standard applies to alteration of nonconforming

---

[5]*SCIT, Inc.* v. *Planning Bd. of Braintree*, 19 Mass. App. Ct. 101 (1984), adds nothing to the developer's argument. In that case, the court focused on the "specific types of uses" provision in order to contrast it with the invalid practice of using special permit requirements to give local zoning boards "roving and virtually unlimited power to discriminate as to uses between landowners similarly situated." *Id.* at 108. The court invalidated a provision of a local zoning by-law which made *all* uses in a business district conditional on the issuance of a discretionary special permit. See *id.* at 110. A special permit requirement for the narrow purpose of extensions of nonconforming uses is not comparable to the provision invalidated in *SCIT*. Indeed, the role that *SCIT* recognized as proper for special permits is remarkably similar to that envisioned for changes in nonconforming uses in the report of the Department of Community Affairs. The court, *supra* at 109, stated the role as follows:

> "Special permit procedures have long been used to bring flexibility to the fairly rigid use classifications of Euclidean zoning schemes . . . by providing for specific uses which are deemed necessary or desirable but which are not allowed as of right because of their potential for incompatibility with the characteristics of the district. . . . Uses most commonly subjected to special permit requirements are those regarded as troublesome (but often needed somewhere in the municipality, for example, gasoline service stations, parking lots, and automobile repair garages) . . . and uses often considered desirable but which would be incompatible in a particular district unless conditioned in a manner which makes them suitable to a given location (for example, an apartment house in a single family residential district)." (Citations omitted.)

uses does not require a different result. In *Walker, supra* at 51-52, we recognized that, "[i]n contrast [to § 6], G. L. c. 40A, § 9, refers to the granting of special permits in general." The "not . . . substantially more detrimental" standard of § 6 is different from the general standard of § 9[6] in recognition of the special nature of nonconforming uses.

For the foregoing reasons, we conclude that the town of Shrewsbury had authority under G. L. c. 40A, to make a change of a nonconforming use a matter for a special permit, subject to the four-fifths voting requirement and other procedures of G. L. c. 40A, § 9. The board's three-fifths vote was insufficient to grant the developer a special permit to alter use of the drive-in theater site. However, since it is not clear that the board applied the "not . . . substantially more detrimental" standard appropriate to requests for alteration of a nonconforming use, we remand the case to the board for further proceedings consistent with this opinion.

*So ordered.*

---

[6]General Laws c. 40A, § 9, provides in part: "Special permits may be issued only for uses which are in harmony with the general purpose and intent of the ordinance or by-law, and shall be subject to general or specific provisions set forth therein; and such permits may also impose conditions, safeguards and limitations on time or use."