LENK, J.
**373 *20 We once again construe the "difficult and infelicitous" language of the first two sentences of G. L. c. 40A, § 6, insofar as they concern single- or two-family residential structures. See Fitzsimonds v. Board of Appeals of Chatham, 21 Mass. App. Ct. 53, 55-56, 484 N.E.2d 113 (1985). These statutory provisions set forth both the exemption afforded to all legally preexisting nonconforming structures and uses from the application of zoning ordinances and bylaws, as well as how those protections can be forfeited or retained when such nonconforming structures or uses are extended or altered. The statute also accords special protection to single- and two-family residential structures in the event that the nonconformity is altered or extended; it is the extent of that protection in the circumstances here that we clarify.
The defendant homeowners sought to modify the roof of their two-family house and to add a dormer; doing so would increase the preexisting nonconforming floor area ratio. The zoning board of appeals of Brookline (board) allowed the defendant's request for a special permit, after determining that increasing the preexisting nonconforming nature of the structure would not be substantially more detrimental to the neighborhood than the preexisting nonconforming use. The plaintiff abutters, however, challenged the board's action, contending that the statute does not exempt the defendants from compliance with municipal bylaws, and that to do so here would require the defendants to obtain a variance in addition to the special permit. The plaintiffs appealed; a Land Court judge upheld the board's action.
We conclude that the statute requires an owner of a single- or two-family residential building with a preexisting nonconformity, who proposes a modification that is found to increase the nature of the nonconforming structure, to obtain a finding under G. L. c. 40A, § 6, that "such change, extension or alteration shall not be substantially more detrimental that the existing nonconforming use to the neighborhood." The statute does not require the homeowner also to obtain a variance in such circumstances. We accordingly affirm the judgment of the Land Court.
1. Background. The material facts are not in dispute. The defendants, Jason Jewhurst and Nurit Zuker, own the second-floor condominium unit of a two-family house on Searle Avenue in Brookline. The plaintiffs, Maria Bellalta and Damon Burnard, own a house on Cypress Street that abuts the defendants' house.
**374 The two abutting lots are located in a T-5 residential zoning district that encompasses single-family, two-family, and attached single-family houses. While many of the lots on Searle Avenue are undersized according to the Brookline zoning bylaw, the defendants'
*21 lot is the smallest; its 2,773 square feet are slightly more than one-half the minimum requirement of 5,000 square feet for a lot containing a two-family house in the T-5 zone.
As to the structure itself, the sole legal nonconformity of the defendants' house, which was in existence when they purchased the property, is the floor area ratio (FAR).[3] The Town of Brookline (town) bylaw requires a maximum FAR of 1.0 for a two-family house in a T-5 zoning district, and the defendants' house has a FAR of 1.14. The proposed renovation project would convert the roof of the house from a hip roof to a gable roof and would add a dormer to the street-facing façade, thereby creating 677 square feet of additional living space on the third floor of the building.[4] This project would increase the already nonconforming FAR from 1.14 to 1.38.
The defendants initially submitted their request for a building permit to the building commissioner; that application was denied.[5] The defendants then submitted a request for a special permit to the board, and the board conducted a public hearing on the request. The abutting plaintiffs opposed the request for a special permit, both in writing prior to the hearing and orally at **375 the hearing. Fifteen other neighbors submitted statements in support of the project; they viewed the proposed roofline as being consistent with the over-all design and character of the neighborhood.
Members of the town's building department and its planning board spoke at the hearing, and presented reports on their review of the project, as did the defendants' architect, who had conducted shadow studies of the effect of the proposed roof on the abutters' property. Statements and reports from town officials indicated that the majority of the houses on the street have partial or full third stories, and are taller than the defendants' existing building. Those officials also noted that the proposed project would make the defendant's house appear more consistent, both in height and in design, with the others on the street. The board unanimously determined, inter alia, that, pursuant to the requirements of section 9.05 of the bylaw, "[t]he specific site is an appropriate location for such a use, structure, or condition," and "[t]he use as developed will not adversely affect the neighborhood." Accordingly, the board found that the defendants had satisfied the requirements for *22 issuance of a special permit.[6] The defendants did not request a variance.[7]
The plaintiffs commenced an action in the Land Court, pursuant to G. L. c. 40A, § 17, to challenge the board's decision. The parties agreed that the material facts were not in dispute, and filed **376 cross motions for summary judgment. A Land Court judge denied the plaintiffs' motion and allowed the joint motion of the defendants and the board. The plaintiffs appealed to the Appeals Court, and we allowed their petition for direct appellate review.
2. Discussion. We review de novo the allowance of a motion for summary judgment, viewing the facts "in the light most favorable to the party against whom judgment entered." 81 Spooner Rd., LLC v. Zoning Bd. of Appeals of Brookline, 461 Mass. 692, 699, 964 N.E.2d 318 (2012), citing Albahari v. Zoning Bd. of Appeals of Brewster, 76 Mass. App. Ct. 245, 248 n.4, 921 N.E.2d 121 (2010). A decision on a motion for summary judgment will be upheld if the judge "ruled on undisputed material facts and the ruling was correct as a matter of law" (citation omitted). M.P.M. Bldrs., LLC v. Dwyer, 442 Mass. 87, 89, 809 N.E.2d 1053 (2004).
a. Statutory framework. In order to understand the parties' claims, some background on the statutory framework is necessary.
A preexisting nonconformity is a use or structure that lawfully existed prior to the enactment of a zoning restriction that otherwise would prohibit the use or structure. See generally G. L. c. 40A, § 6 ; Shrewsbury Edgemere Assocs. Ltd. Partnership v. Board of Appeals of Shrewsbury, 409 Mass. 317, 319, 565 N.E.2d 1214 (1991). Preexisting nonconformities become protected when zoning laws change, as a result of the long-standing recognition that "rights already acquired by existing use or construction of buildings in general ought not to be interfered with." See Opinion of the Justices, 234 Mass. 597, 606, 127 N.E. 525 (1920).
Preexisting non-conforming lots and structures throughout the Commonwealth are protected under G. L. c. 40A, § 6. General Laws c. 40A, § 6, provides, in relevant part:
"[1] Except as hereinafter provided, a zoning ordinance or by-law shall not apply to structures or uses lawfully in existence or lawfully begun, ... but shall *23 apply to any change or substantial extension of such use, ... to any reconstruction, extension or structural change of such structure and ... to provide for its use for a substantially different purpose or for the same purpose in a substantially different manner or to a substantially greater extent [2] except where alteration, reconstruction, extension or structural change to a single or two-family residential structure does not increase the nonconforming nature of said structure. Pre-existing **377 nonconforming structures or uses may be extended or altered, provided, that no such extension or alteration shall be permitted unless there is a finding by the permit granting authority or by the special permit granting authority designated by ordinance or by-law that such change, extension or alteration shall not be substantially more detrimental than the existing nonconforming [structure or[8] ] use to the neighborhood" (emphasis added).
The language of G. L. c. 40A, § 6, has been recognized as particularly abstruse. See Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. 15, 20, 514 N.E.2d 369 (1987) ("The first paragraph of G. L. c. 40A, § 6... contains an obscurity of the type which has come to be recognized as one of the hallmarks of the chapter"). See, e.g., Fitzsimonds, 21 Mass. App. Ct. at 55-56, 484 N.E.2d 113. What has become known as the "first 'except' clause" of that statute affords explicit protection to the continuance of previously compliant structures and uses that are no longer compliant with subsequently enacted zoning bylaws. See G. L. c. 40A, § 6. See Willard, supra. Ordinarily, however, an extension or structural change to a preexisting nonconforming structure or use must comply with the applicable municipal bylaw. See Rockwood v. Snow Inn Corp., 409 Mass. 361, 364, 566 N.E.2d 608 (1991). The addition in 1975 of what has become known as the "second 'except' clause, "without accompanying explanation," see Willard, supra at 18, 514 N.E.2d 369, citing 1974 House Doc. No.5864, further complicated the statute's already difficult language. See, e.g., Fitzsimonds, 21 Mass. App. Ct. at 56, 484 N.E.2d 113. That clause extends additional protections to single- and two-family nonconforming structures, and allows as of right the "alteration, reconstruction, extension or structural change" of such a structure, so long as the "extended or altered" structure "does not increase" its "nonconforming nature." G. L. c. 40A, § 6. Where a proposed extension, structural change, reconstruction, or alteration would increase the "nonconforming nature" of the structure, a homeowner must obtain a finding from the relevant permit granting authority that the proposed modification would not be "substantially more detrimental"
**378 to the neighborhood than is the existing nonconformity. Id.
The plaintiffs contend that, in addition to the requirement of G. L. c. 40A, § 6, that the board find the defendants' proposed project would not be "substantially more detrimental" to the neighborhood, the defendants also are required to obtain approval from the board for a variance from the town's bylaw. Because the defendants obtained only a special permit, the *24 plaintiffs argue that the proposed project does not meet the requirements of G. L. c. 40A, § 6. In the plaintiffs' view, the language of the statute, its legislative history, and our existing jurisprudence do not exempt single- and two-family nonconforming structures from the requirement of obtaining a variance under the town's bylaws in order to make any change that would intensify the preexisting nonconformity; the plaintiffs contend also that the requirement of a variance is in addition to obtaining a finding of no substantial detriment under G. L. c. 40A, § 6.
b. Statutory construction. "As with all matters of statutory interpretation," Commonwealth v. Mogelinski, 466 Mass. 627, 633, 1 N.E.3d 237 (2013), a court construing a zoning act must "ascertain and effectuate legislative intent," as expressed in the statutory language. See S. Singer, 3C Statutes and Statutory Construction § 77:7, at 659 (8th ed. 2018) (Singer). See also Commonwealth v. Escobar, 479 Mass. 225, 230, 93 N.E.3d 1156 (2018). Where, as here, "the meaning of [the] statute is not clear from its plain language, well-established principles of statutory construction guide our interpretation" (citation omitted). Id. at 228, 93 N.E.3d 1156. Specific provisions of a statute are to be "understood in the context of the statutory framework as a whole, which includes the preexisting common law, earlier versions of the same act, related enactments and case law, and the Constitution." Singer, supra at § 77:7, at 692-694. A reviewing court's interpretation "must be reasonable and supported by the ... history of the statute." See Mogelinski, supra at 633, 1 N.E.3d 237, quoting Wright v. Collector & Treas. of Arlington, 422 Mass. 455, 457-458, 663 N.E.2d 572 (1996). Ultimately, we must "avoid any construction of statutory language which leads to an absurd result," or that otherwise would frustrate the Legislature's intent. See Singer, supra at § 77:7, at 689. See also Worcester v. College Hill Props., LLC, 465 Mass. 134, 138, 987 N.E.2d 1236 (2013).
The crux of the issue in this appeal turns on the language of the "second 'except' clause," and the extent of the protections it affords to owners of single- and two-family preexisting nonconforming **379 structures who seek to intensify those nonconformities. As noted, the second "except" clause had "no identifiable ancestor" in earlier versions of the zoning act, before its appearance "without accompanying explanation ... in 1974 House Doc. No 5864" (citation omitted). Willard, 25 Mass. App. Ct. at 18, 514 N.E.2d 369. The "chief document" in the legislative history of the zoning act is a comprehensive report that was prepared by the Department of Community Affairs, which included its proposed recommendations and amendments to the act. See Bransford v. Zoning Bd. of Appeals of Edgartown, 444 Mass. 852, 867 & n.3, 832 N.E.2d 639 (2005) (Cordy, J., dissenting), citing Report of the Department of Community Affairs Relative to Proposed Changes and Additions to the Zoning Enabling Act, 1972 House Doc. No. 5009 at 35 (DCA report). As concerned the treatment of legally preexisting nonconformities, the DCA report recognized, on the one hand, a goal of effectuating the "eventual elimination of nonconformities in most cases." See DCA Report, supra at 39. The report also recognized, however, that, "[o]n the other hand, there is increasing awareness that the assumption it is desirable to eliminate non-conforming uses may not always be valid." See id. at 43, 45, 49, 62, 63, 65, 84 (noting constitutional and public policy reasons against eliminating property rights already acquired).
In an effort to reconcile these goals, the DCA report proposed, inter alia, a course of action that would have provided extremely *25 limited protections for any modification of a nonconforming structure, such as recognizing only a right to "perform normal maintenance and repair" on such structures. See id. at 44. The Legislature rejected this proposal, without stated reasoning, when it instead inserted the language of the second except clause, thereby creating explicit protections for one- and two-family residential structures, and allowing increases in the nonconforming nature of such structures, upon a finding of no substantial detriment to the neighborhood. See G. L. c. 40A, § 6.[9]
To ensure that the protections the Legislature intended to afford **380 single- and two-family residential structures are appropriately enforced by permitting authorities, reviewing courts have employed a long-standing interpretive framework construing the second except clause. This framework was first discussed in 1985 in Fitzsimonds, 21 Mass. App. Ct. at 56, 484 N.E.2d 113, by Judge Benjamin Kaplan, writing for the court; elaborated upon in Willard, 25 Mass. App. Ct. at 18-22, 514 N.E.2d 369 ; and subsequently adopted by this court in Bjorklund v. Zoning Bd. of Appeals of Norwell, 450 Mass. 357, 358, 362-363, 878 N.E.2d 915 (2008) (adopting reasoning of concurrence in Bransford v. Zoning Bd. of Appeals of Edgartown, 444 Mass. 852, 857-858, 832 N.E.2d 639 [2005] [Greaney, J., concurring] ). See Deadrick v. Zoning Bd. of Appeals of Chatham, 85 Mass. App. Ct. 539, 552, 11 N.E.3d 647 (2014) ("a long line of cases, notably including Bransford and Bjorklund, have held that an alteration that intensifies an existing nonconformity in a residential structure may be authorized under the second sentence of G. L. c. 40A, § 6, upon a finding of no substantial detriment" [alteration omitted] ).
Under this framework, the second except clause first requires the permit granting authority[10] to make "an initial determination whether a proposed alteration of or addition to a nonconforming structure would 'increase the nonconforming nature of said structure' " (citation omitted). Willard, 25 Mass. App. Ct. at 21, 514 N.E.2d 369. This initial determination requires the permitting authority to "identify the particular respect or respects in which the existing structure does not conform to the requirements of the present by-law and then determine whether the proposed alteration or addition would intensify the existing nonconformities or result in additional ones."
*26 Id. at 21-22, 514 N.E.2d 369. "If the answer to that question is in the negative, the applicant will be entitled" to a permit to proceed with the proposed alteration.[11] See id. at 22, 514 N.E.2d 369. "Only if the answer to that question is in the affirmative will there be any occasion for **381 consideration of the additional question," id. at 22, 514 N.E.2d 369, that is, whether the proposed modification would be "substantially more detrimental to the neighborhood," see id. at 21, 514 N.E.2d 369. The " Willard test should be read as prescribing an entitlement to a building permit, not a special permit or finding, where no intensification of the nonconformity would result" (citation omitted). Bransford, 444 Mass. at 865 n.2, 832 N.E.2d 639 (Cordy, J., dissenting). See, e.g., Deadrick, 85 Mass. App. Ct. at 550, 11 N.E.3d 647 ("It is important to observe at this juncture that the second 'except' clause is directed to differentiating between those changes to nonconforming residential structures that may be made as of right, and those that require a finding of no substantial detriment under the second sentence of [G. L. c. 40A,] § 6"). Only if a modification, extension, or reconstruction of a single- or two-family house would "increase the nonconforming nature of said structure" must it "be submitted ... for a determination by the board of the question whether it is 'substantially more detrimental than the existing nonconforming use' " pursuant to the sentence that follows the second except clause G. L. c. 40A, § 6" (citations omitted). Bransford, supra at 857-858, 832 N.E.2d 639 (Greaney, J., concurring).
c. Relief requested by the defendants. With respect to the defendants' plans to add 677 square feet of living space by adding a dormer to the third floor of their house and modifying the design of the roof, the framework first required a determination whether, and in what respect, the defendants' proposed extension would increase the nonconforming nature of the two-family structure. See Willard, 25 Mass. App. Ct. at 21-22, 514 N.E.2d 369. The board determined that the proposed project would increase the extent of the already nonconforming FAR,[12] a determination that the parties did not dispute, and then proceeded to consider whether the defendants' house after modification would be substantially more detrimental to the neighborhood. Concluding that it would not, the board issued the requested zoning relief.
The board, however, did not consider whether the increase in **382 the nonconforming FAR from 1.14 to 1.38 would increase the "nonconforming nature," G. L. c. 40A, § 6, of the defendants' property, and such a determination is hardly self-evident. At the hearing, a member of the town's building department described the requested relief as "minimal," and several members of the planning board described it as "modest." We previously observed that certain small-scale extensions, such as the addition of a dormer, a porch, a sunroom, or a two-car *27 garage, among others, would not, as a matter of law, constitute an intensification of the nonconforming nature of a structure. Bjorklund, 450 Mass. at 362-363, 878 N.E.2d 915. "Concerns over the making of small-scale alterations, extensions, or structural changes to a preexisting house are illusory.... Because of their small-scale nature, the improvements mentioned could not reasonably be found to increase the nonconforming nature of a structure." Id.
As the parties have stipulated to the material facts, however, we assume, without deciding, that the proposed project, taken as a whole, would have constituted an increase to the nonconforming nature of the structure. Accordingly, we turn to the plaintiffs' contention that, because no provision of the town's zoning bylaw would have allowed the requested increase in the FAR, G. L. c. 40A, § 6, also requires that the defendants obtain a variance from the town's zoning bylaw.
d. Town's bylaw. In Gale v. Zoning Bd. of Appeals of Gloucester, 80 Mass. App. Ct. 331, 337, 952 N.E.2d 977 (2011), the Appeals Court confronted a similar issue. There, the zoning board of appeals had granted relief allowing the proposed reconstruction of a residence that would have increased the nonconforming nature of the structure. Id. at 333, 952 N.E.2d 977. The board in that case determined that the reconstructed house, which would extend beyond the footprint of the original house, and would increase the preexisting nonconformities in the setback requirements of the city of Gloucester's zoning bylaw, would not result in a substantial detriment to the neighborhood, and allowed the homeowner's request for a special permit. Id. at 332-333, 952 N.E.2d 977. After concluding that "literal enforcement" of the zoning bylaw would create a personal and financial hardship for the property owners due to the size, shape, steep grade, and outcroppings on the property, the Gloucester board also granted the homeowners a variance. Id. at 333, 952 N.E.2d 977. The abutting homeowners challenged the board's decision in the Land Court; they argued that the issuance of the variance was in error because the request did not meet the requirements for issuance of a variance.
**383 Id. A Land Court judge held that the determination that the reconstruction would not have resulted in a substantial detriment to the neighborhood was all that was required under G. L. c. 40A, § 6. See Gale, supra at 333-334, 952 N.E.2d 977 ; id. at 337, 952 N.E.2d 977 (variance is not required "as an additional step when proceeding to the no substantial detriment finding under the second sentence" exception for one- and two-family houses). See also Deadrick, 85 Mass. App. Ct. at 553, 11 N.E.3d 647 (affirming that variance is not required for owners of one- and two-family properties to increase legally preexisting nonconformity).[13]
We note also that, since its enactment in 1975, see St. 1975, c. 808, § 3, the Legislature has amended G. L. c. 40A, § 6, numerous times. See St. 1977, c. 829, § 3D; St. 1979, c. 106; St. 1982, c. 185; St. 1985, c. 494; St. 1986, c. 557, § 54; St. 1994, c. 60, § 67; St. 1996, c. 345, § 1; St. 2000, c. 29; St. 2000, c. 232; and St. 2016, c. 219, § 29. Presumably, the Legislature therefore has adopted the framework first described in Fitzsimonds, 21 Mass. App. Ct. at 56, 484 N.E.2d 113, and most recently discussed in detail in *28 Gale, 80 Mass. App. Ct. at 336-337, 952 N.E.2d 977. Where a statute or provision that has been given a particular construction by the courts is reenacted "without substantial change, it is generally fair to assume the legislature is familiar with that interpretation and adopted it." See Singer, supra at § 77:7, at 711. Indeed, when the Legislature "enacts or amends a statute, courts presume it has knowledge of ... relevant judicial and administrative decisions, and it passed or preserved cognate laws to serve a useful and consistent purpose." Id. Where, as here, the Legislature has had considerable occasion to amend G. L. c. 40A, § 6, and repeatedly has amended the statute without changing the language at issue, we presume that it has adopted the construction of the statute upon which Massachusetts courts -- and this class of homeowners -- have relied. We leave that framework undisturbed.
Accordingly, in keeping with the Legislature's intent as it pertains to the special protections afforded one- and two-family residential structures, a variance from the local bylaw is not required by G. L. c. 40A, § 6 ; obtaining a finding of "no substantial detriment to the neighborhood" is all that is required. See Rockwood, 409 Mass. at 364, 566 N.E.2d 608 (single- and two-family residences are **384 given "special protection" with regard to their existing nonconformities); Gale, 80 Mass. App. Ct. at 337, 952 N.E.2d 977 (outlining "special treatment" explicitly afforded to single- and two-family residential buildings); Dial Away Co. v. Zoning Bd. of Appeals of Auburn, 41 Mass. App. Ct. 165, 170-171, 669 N.E.2d 446 (1996) (if not for "special status" of nonconforming single and two-family residences, "the by-law would probably apply").
Indeed, given the difficulties and expense associated with obtaining a variance, as well as in obtaining a finding of no substantial detriment, construing the statute to mandate both well could render illusory the protections the Legislature intended to provide these homeowners.[14] See Bransford, 444 Mass. at 870 n.7, 832 N.E.2d 639 (Cordy, J., dissenting) ("without question [the process of obtaining a special permit or variance] renders many home improvements more costly and subject to the discretionary determinations of local zoning boards"). Requiring single- and two-family homeowners to obtain both under these circumstances would render it nearly impossible for the homeowners to renovate, modernize, or make any substantial improvements to an older home, particularly if those improvements would increase the nonconforming nature of the structure. This could, as a practical matter, make it economically infeasible to modify a nonconforming home in any but the most minimal ways, could curtail the ability to sell such a house, and, accordingly, could result in a reduction in the amount of available affordable housing, as well as potentially reducing the town's population and the municipal tax base. Indeed, as *29 noted in Bransford, 444 Mass. at 869-870, 832 N.E.2d 639 (Cordy, J., dissenting), "application of the [plaintiffs'] reasoning is not without practical consequence to the multitude of citizens who own homes in cities or towns that, at some recent point, have attempted to limit growth by increasing minimum lot sizes, often **385 dramatically. The need to secure findings or special permits through lengthy, costly, and discretionary local zoning processes for any improvement that might increase the living space or footprint of a house might put such improvements out of reach for many homeowners. Requiring homeowners to run such an administrative gauntlet impedes and burdens the upgrade of a large part of our housing stock."
Given this, we do not think that the Legislature intended to require single- and two-family homeowners to undertake the laborious process of seeking both a special permit and a variance. To construe G. L. c. 40A, § 6, in this way would place an additional burden on this limited class of homeowners, contrary to the clear statutory intent to provide them with special protections under the second except clause. See Flemings v. Contributory Retirement Appeal Bd., 431 Mass. 374, 375-376, 727 N.E.2d 1147 (2000), citing Manning v. Boston Redevelopment Auth., 400 Mass. 444, 453, 509 N.E.2d 1173 (1987) ("If a sensible construction is available, we shall not construe a statute to make a nullity of pertinent provisions or to produce absurd results").
Finally, the plaintiffs contend that the decisions in both Gale and Deadrick were erroneous, and do not comport with this court's language in Rockwood, 409 Mass. at 364, 566 N.E.2d 608. In Rockwood, supra, the court stated in dictum that "even as to single or two-family residences, structures to which the statute appears to give special protection, the zoning ordinance or bylaw applies to a reconstruction, extension, or change that would intensify the existing nonconformities or result in additional ones" (quotations omitted). Id., quoting Willard, 25 Mass. App. Ct. at 22, 514 N.E.2d 369. Rockwood, however, involved the application of G. L. c. 40A, § 6, to a commercial inn, and accordingly did not involve the special protections from compliance with a local ordinance afforded to one- and two-family houses. Further, consistent with our holding in Bransford, 444 Mass. at 858-859, 832 N.E.2d 639, to the extent that the obiter dictum expressed in Rockwood might suggest otherwise for one- and two-family houses, it is incorrect.
The plaintiffs emphasize that no provision of the town's bylaw would permit the increase in the FAR sought here, and the defendants do not contest this assertion.[15] Our prior jurisprudence, before Gale, 80 Mass. App. Ct. at 331, 952 N.E.2d 977, involved situations **386 in which the local bylaws at issue were coextensive with the *30 language of G. L. c. 40A, § 6, thus serving as a mere procedural implementation of the statute's requirements. See, e.g., Bjorklund, 450 Mass. at 357-358, 878 N.E.2d 915 ; Bransford, 444 Mass. at 855, 832 N.E.2d 639 ; Rockwood, 409 Mass. at 364, 566 N.E.2d 608 ; Willard, 25 Mass. App. Ct. at 19-20, 514 N.E.2d 369. By contrast, the town's bylaw does not contain a parallel provision implementing the language and requirements of G. L. c. 40A, § 6. Rather, section 8.02(2) of the bylaw provides that any nonconforming structure or use "may be altered, repaired, or enlarged, except that any nonconforming condition may not be increased unless specifically provided for in a section of this By-law." To the extent that no provision of the bylaw would permit the increase in FAR that the defendants seek, a zoning variance would be required, in addition to the requisite finding of no substantial detriment under G. L. c. 40A, § 6, in order to permit a modification that would increase the "nonconforming nature" of the two-family structure.
General Laws c. 40A, § 6, however, creates a statutory requirement that "sets the floor" throughout the Commonwealth for the appropriate protections from local zoning bylaws to be afforded properties and structures protected under that statue. See Rourke v. Rothman, 448 Mass. 190, 191 n.5, 859 N.E.2d 821 (2007). As such, the statute prescribes "the minimum of tolerance that must be accorded to nonconforming uses." (citation omitted). See ibr.US_Case_Law.Schema.Case_Body:v1">id. A municipality's bylaws may not afford fewer protections to preexisting nonconforming structures or uses than does the governing statute. See, e.g., Schiffenhaus v. Kline, 79 Mass. App. Ct. 600, 605, 947 N.E.2d 1133 (2011), quoting Planning Bd. of Reading v. Board of Appeals of Reading, 333 Mass. 657, 660, 132 N.E.2d 386 (1956) ("It is axiomatic that '[a] by-law cannot conflict with the statute' "). The board determined as much, construing its own bylaw as prescribing only a finding of no substantial detriment in order to issue the requested zoning relief. See **387 Plainville Asphalt Corp. v. Plainville, 83 Mass. App. Ct. 710, 713, 989 N.E.2d 526 (2013) (applying "corollary principle that statutes or bylaws dealing with the same subject should be interpreted harmoniously to effectuate a consistent body of law"). Because the governing statute and its interpretive framework do not require a variance here, a municipality's bylaw may not do so.
Judgment affirmed.

A building's floor area ratio (FAR) compares the gross floor area of the building to the area of the lot upon which it is built. See generally Institute for Local Government, Land Use and Planning: Glossary of Land Use and Planning Terms, at 24 (2010). A provision of the town of Brookline's (town's) bylaw entitled "Floor Area Ratio" provides that, "[f]or any building ... the ratio of gross floor area to lot area shall not exceed the maximum specified in the Table of Dimensional Requirements." See Town of Brookline Planning and Community Development Dep't, Zoning By-Law, Art. V Dimensional Requirements, at § 5.20 (May 24, 2018). The table of dimensional requirements specifies that the maximum FAR for a two-family house in a T-5 residential zoning district is 1.0. Id.

A hip roof is a structural design in which each side of the roof slopes downward from a central ridge toward the walls of the building. With a gable roof, only two sides slope downward from a central ridge. See C. M. Harris, American Architecture: An Illustrated Encyclopedia, at 142, 174 (1998). A dormer is a structure, often containing a window, that projects vertically beyond the plane of the roof. See id. at 174.

The record before us does not reflect the grounds for the denial. We note, however, that section 9.05.1 of the zoning bylaw requires specific findings by the board of appeals in order to increase a nonconformity in a nonconforming structure.

Although the board's decision does not contain an explicit finding that the project would not be substantially more detrimental to the neighborhood than the existing structure, the Land Court judge appropriately noted that the finding is implied by the board's decision to grant the requested relief for a special permit, as well as its reference to the requirements of G. L. c. 40A, § 6. While the board made a finding under the language of the zoning bylaw that "the use as developed will not adversely affect the neighborhood," the board allowed issuance of the special permit after having heard numerous professional and lay opinions using the language that the project would not result in a "substantial detriment." Further, a finding of "no adverse effect" arguably is a much more stringent standard than a finding of "no substantial detriment." The parties properly do not dispute that the board found that the project would not result in a substantial detriment to the neighborhood.

A variance is a grant of relief from certain provisions in a municipality's zoning ordinance; such a deviation from the bylaw may be allowed only upon a finding that "owing to circumstances relating to the soil conditions, shape, or topography of such land or structures ..., a literal enforcement of the provisions of the ordinance or by-law would involve substantial hardship, financial or otherwise, to the petitioner" and that "desirable relief may be granted without substantial detriment to the public good and without nullifying or substantially derogating from the intent or purpose of such ordinance or by-law." G. L. c. 40A, § 10.

In Willard v. Board of Appeals of Orleans, 25 Mass. App. Ct. 15, 21, 514 N.E.2d 369 (1987), the Appeals Court construed the statutory exception for extensions or alterations to nonconforming uses in G. L. c. 40A, § 6, as including nonconforming structures, in addition to nonconforming uses. Subsequent jurisprudence has continued to construe the statutory language as applicable both to nonconforming uses and structures. See, e.g., Bransford v. Zoning Bd. of Appeals of Edgartown, 444 Mass. 852, 857, 832 N.E.2d 639 (2005) (Greaney, J., concurring).

In support of their proposed reading of the statute, the plaintiffs argue the inequity of requiring, in identical circumstances, a conforming structure such as theirs to obtain a variance when a nonconforming structure need not do so. The inequity is not so apparent when one considers that conforming houses on conforming lots would not require even a special permit to undertake many modifications where, absent the statutory protections afforded one- and two-family nonconforming houses, comparable modifications would require a special permit or variance. More fundamentally, however, and as discussed supra, the Legislature chose to protect certain limited existing housing stock, as it was free to do. Not all housing stock is treated the same by the Legislature, and owners of nonconforming three-family houses, for example, might also find cause to complain in such legislative line-drawing. Perceived inequities resulting from legislative choices do not affect our construction of the statute.

The permit granting authority is statutorily defined as "the board of appeals or zoning administrator." See G. L. c. 40A, § 1A. The concurrence in Bransford pointed out that the initial determination "more appropriately should be conducted by the building inspector or zoning administrator" in the first instance. Bransford v. Zoning Bd. of Appeals of Edgartown, 444 Mass. at 858, nn.8, 9, 832 N.E.2d 639 (Greaney, J., concurring), citing M. Bobrowski, Massachusetts Land Use and Planning Law, § 6.06 (2d ed. 2002).

Earlier cases loosely used the term "special permit" to describe the process by which nonconforming one- and two-family homeowners can proceed with modifications or alterations to their nonconforming homes. See, e.g., Bransford, 444 Mass. at 864 n.2, 832 N.E.2d 639 (Cordy, J., dissenting). Our reference to the "permitting procedure" and the "permit granting authority" encompasses any designated process by which municipalities allow their residents to proceed with home building renovations in the ordinary course.

As mentioned, although the defendants in this case first sought approval for the project from the town's building commissioner pursuant to the procedures outlined in Bransford, supra at 857-858, 832 N.E.2d 639, the request was denied. As a result, the defendants submitted their application to the town's zoning board of appeals.

As the parties agree that in this case the question involves an increase in a preexisting nonconformity, we need not address the issue presented in Deadrick v. Zoning Bd. of Appeals of Chatham, 85 Mass. App. Ct. 539, 553, 11 N.E.3d 647 (2014), concerning the creation of a new nonconformity.

The burdens that an applicant must meet, both to obtain a variance and to retain it on appeal, see Kirkwood v. Board of Appeals of Rockport, 17 Mass. App. Ct. 423, 427, 458 N.E.2d 1213 (1984), are significant. See, e.g., Wolfson v. Sun Oil Co., 357 Mass. 87, 89-91, 256 N.E.2d 308 (1970) (where board's findings inadequate, judge on appeal can annul issuance of variance without considering its merits); Gamache v. Acushnet, 14 Mass. App. Ct. 215, 220, 438 N.E.2d 82 (1982) (requirements for findings to support variance are "rigorous"). Although the requirements and expenses of obtaining a special permit or a finding of no substantial detriment certainly are not small hurdles, they are not of the same magnitude. See Mendes v. Board of Appeals of Barnstable, 28 Mass. App. Ct. 527, 531, 552 N.E.2d 604 (1990) (grant of variance is "grudging and restricted," while grant of special permit is "anticipated and flexible").

Section 8.02 of the bylaw permits an "alteration or extension" of a nonconforming use, but provides that "any increase in volume, area, or extent of the nonconforming use shall not exceed an aggregate of 25 percent during the life of the nonconformity." Section 5.22 of the bylaw, "Exceptions to Maximum Floor Area Ratio (FAR) Regulations for Residential Units," permits exceptions for additional floor area for buildings where the certificate of occupancy was issued at least ten years previously, and provides that "[e]xterior modifications to accommodate an exterior addition or interior conversion shall include, without limitation the addition of a dormer, penthouse, cupola, windows, doors or the like." The defendants' proposed addition would result in an increase in the extent of the existing nonconforming FAR of 1.14 to an ultimate FAR that would be thirty-eight per cent higher than the permitted FAR of 1.0, and thirteen per cent higher than the maximum exception of twenty-five per cent.