NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-257

NOTRE DAME TRAINING SCHOOL[1]

vs.

TOWN OF TYNGSBOROUGH & others.[2]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, Notre Dame Training School (Notre Dame), owned property (property) in the town of Tyngsborough.  After it was assessed for a betterment by the town in connection with a sewer improvement project, Notre Dame petitioned unsuccessfully for an abatement of the assessment.  It then brought an action in the Superior Court against the defendants, the town and the members of its board of sewer commissioners (board), seeking the abatement.[3]  See G. L. c. 80, § 7.  A judge of that court entered

---

[1] As is our usual practice, we take the parties' names as they appear in the operative complaint.

[2] Darryl Wickens, Brian J. Martin, and Frederick H. Perrault, as they are Sewer Commissioners of the Tyngsborough Sewer Commission.

[3] Notre Dame also sought an award of costs and attorney's fees in connection with that action.

summary judgment in favor of Notre Dame, and the defendants appeal. We affirm.

Background. The following facts are undisputed. At all relevant times, Notre Dame has operated a day school on the property. At the 2015 annual town meeting, the town voted to approve a "sewer system infrastructure project" financed in substantial part by betterment assessments made on certain properties, including the one owned by Notre Dame.

The board's procedure for calculating betterments was set out in its regulations and reflected the board's decision to use a "Uniform Unit Method" to determine the betterment assessment for each property subject to the betterment requirement. Tyngsborough Sewer Commission, Final Betterment Assessment and Sewer Privilege Fees Rules and Regulations § 1.4 (2014) (Board Regulations). See G. L. c. 83, § 15 (town may adopt a system of sewerage and may provide that betterment assessments "shall be made upon owners of land within such territory by a fixed uniform rate or a rate based upon a uniform unit method"). That method called for the assessments to "be determined by unit and user class, as determined by the State Land Use Codes in the Tyngsborough Assessor database, and shall apply to all eligible lands developed and undeveloped abutting the . . . public sewer line." Board Regulations § 3.1. In keeping with the requirements of § 15, the board's regulations required the board

2

to calculate assessments for nonresidential properties based on the property's proportionate share of the total "existing and potential sewer units" attributable to the project.  Board Regulations § 2.13.  The regulations defined a "sewer unit" as "equal to [the wastewater flow expected from] one single-family residence."  Board Regulations § 2.10.  To convert nonresidential properties' use into potential sewer units, the regulations used an "Equivalent Residential Unit" (ERU).[4]  Board Regulations §§ 2.3, 2.13.

To calculate each nonresidential property's total sewer units, the board included in its regulations a formula, which we set out in the margin, that relied on the property's average water usage over the prior two years.[5]  Board Regulations

---

[4] The parties agree that at the times relevant here, one ERU was the equivalent of 330 gallons per day of sewer usage.
[5] In relevant part, the regulations provided:

> "Non-residential buildings, which are metered for water use, shall comprise a number of Sewer Units based upon water consumption using the following formula:
>
> "Number of Sewer Units = Non-residential water usage in gallons per day (gpd)/One ERU
>
> "(All decimals shall be rounded up to the nearest whole number)[.]
>
> "Non-residential water usage in the above formula shall be based upon an average of the past two years water use.  If less than two years of metered water consumption records are available, or if the Commission deems that the water records are not representative of the potential usage, the calculation shall be based on 'Title 5 of the State

3

§ 4.2.2.2.  The regulations permitted the board to rely on other methods of calculating the property's water usage only "[i]f less than two years of metered water consumption records are available, or if the [board] deems that the water records are not representative of the potential usage."  Id.  Otherwise, this formula was the mandatory method of determining the number of sewer units attributed to each nonresidential property.[6]

Notre Dame provided the board with records of at least two years of metered water use for the property.  Although the board stated that "[it] never specifically made any . . . determination" that the water records Notre Dame produced were not "representative" of the school's "potential water usage,"[7] it

_____

Environmental Code, 310 CMR 15.00, for the Commonwealth of Massachusetts Minimum Requirements for the Subsurface Disposal of Sanitary Sewage,' or as detailed in the state-approved CWMP planning documents on file for the sewer system, as outlined below."  Board Regulations § 4.2.2.2.

[6] "Non-residential buildings, which are metered for water use, shall comprise a number of Sewer Units based upon water consumption using the following formula."  Board Regulations § 4.2.2.2. (emphasis added).  See McCauley v. Superintendent, Massachusetts Correctional Inst., Norfolk, 491 Mass. 571, 597 (2023) ("shall" connotes mandatory action).

[7] "INTERROGATORY NO. 2:  State whether the [board] determined that metered water consumption records for the [s]chool were not representative of the [s]chool's potential water usage, or whether metered water consumption records were not available for the [s]chool.

"ANSWER NO. 2:  [A]lthough metered water consumption records were available for the [s]chool, the [board] never specifically made any such determination relative to the [s]chool, as it determined that calculating the assessments for all the parcels to be assessed on the CWMP methodology was fair

4

did not use the required formula to calculate the assessments for Notre Dame (or for any of the other the nonresidential properties affected by the sewer project).  Instead, on the recommendation of the town's engineering consultants, the board calculated those betterment assessments using a "Comprehensive Wastewater Management Plan" (CWMP) formula.  The CWMP formula relied on projections of potential water use based on the size of the building space on each property, rather than on the predictive value of a property's past water use.[8]  The board represented that it used the CWMP method based on its belief that because not all affected parcels were metered for water usage, the CWMP method was the only method that could be applied equitably to all properties subject to the betterment assessment.  Using the CWMP formula, the board determined that the Notre Dame property comprised forty-four ERUs and thus assessed a betterment of $511,174.84 against it.  Notre Dame petitioned for an abatement of this assessment, arguing that the board should have relied on the property's past two years of water usage, as mandated by the regulations noted above.  Under the formula required by the board's regulations, the property comprised only fourteen ERUs, which would have resulted in a

_____

and equitable given that not all parcels were metered for water consumption."

[8] In Notre Dame's case, the board projected 100 gallons of flow for every 1,000 square feet of building space.

betterment assessment of $174,264.15.  The board denied Notre Dame's petition for abatement.  Notre Dame filed this action in the Superior Court and prevailed on the parties' cross-motions for summary judgment.  This appeal followed.

Discussion.  We review the allowance of a motion for summary judgment de novo.  See Bellalta v. Zoning Bd. of Appeals of Brookline, 481 Mass. 372, 376 (2019).  "Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law."  Boazova v. Safety Ins. Co., 462 Mass. 346, 350 (2012), citing Mass. R. Civ. P. 56 (c), as amended, 436 Mass. 1404 (2002).  Because we conclude that the board failed to follow the clear language of its regulations when calculating Notre Dame's betterment assessment, and that it failed to argue that Notre Dame's records of past water use were "not representative of [its] potential usage," see Board Regulations § 4.2.2.2, we affirm.

In interpreting the regulations, we apply accepted rules of statutory construction.  See Cohen v. Board of Water Comm'rs, Fire Dist. No. 1, S. Hadley, 411 Mass. 744, 748 (1992) (traditional rules of statutory construction apply to interpretation of regulations).  Having done so, we conclude that the board's regulations established a clear, unambiguous, and mandatory method for determining the betterment assessment

6

at issue here.[9]  See note 5, supra.  Because the board failed to follow the mandatory formula set forth in the regulations, it erred in its calculation of the betterment.  See Warcewicz v. Department of Envtl. Protection, 410 Mass. 548, 552 (1991) ("[O]nce having exercised its power to promulgate regulations, the department may not infinitely manipulate or expand their content"); Finkelstein v. Board of Registration in Optometry, 370 Mass. 476, 478 (1976) ("[C]ourts will not hesitate to overrule agency interpretations of rules when those interpretations are arbitrary, unreasonable or inconsistent with the plain terms of the rule itself").  Because the betterment calculation was erroneous, the board erred in denying Notre Dame's petition for abatement of that assessment.  See G. L. c. 80, §§ 1, 5.

The board raises two new issues on appeal.  First, it contends that it did, in fact, "deem" the records of past water use by any nonresidential property subject to the betterment assessment to be "not representative" of potential sewer usage, or at least that it was entitled to an inference that it had done so.  This is at odds with the board's admission that in

---

[9] Because we discern no ambiguity in the relevant regulations, we need not defer to the board's interpretation of them.  See DeCosmo v. Blue Tarp Redev., LLC, 487 Mass. 690, 699 (2021) (collecting cases) ("If the regulation is plain and unambiguous, it should be interpreted according to its terms").

7

calculating the betterment assessments for nonresidential properties affected by the sewer project, it "never specifically made any . . . determination" about the representativeness of such records.  Instead of asserting that the existing sewer records were not representative, the board effectively put all its eggs in a different basket, arguing that its use of the CWMP method here was justified because "it is the only methodology of the three [methodologies proposed by the engineers] that could be applied to all of the parcels," and was thus "fair and equitable."

Consistent with its "all or nothing" position, the only relief that the board requested of the judge or of this court is affirmance of its denial of Notre Dame's request for an abatement.  The board did not ask the judge -- should he disagree with the board's chosen methods -- to remand the matter for the board to consider whether the existing sewer records were representative.  Nor has it made any argument to us that the judge erred by not ordering such a remand.  Any such argument is waived, and we do not consider it.  See Carey v. New England Organ Bank, 446 Mass. 270, 285 (2006).

Second, the board claims that interpreting the regulations to require application of the formula set out at § 4.2.2.2 violates constitutional provisions requiring that betterment assessments be "proportional."  That claim, like the claim we

8

have just discussed, was waived.  See Gurry v. Board of Pub. Accountancy, 394 Mass. 118, 126 (1985) ("Except for jurisdictional claims based upon constitutional challenges to an agency's enabling legislation, litigants involved in adjudicatory proceedings should raise all claims before the agency, including those which are constitutionally based").  Even if that were not the case, however, we are not persuaded that the regulations offended constitutional requirements.  As the board correctly acknowledges, in enacting G. L. c. 83, § 15, the Legislature authorized the board to apportion the cost of the sewer improvements using the uniform unit method, the method the board chose to adopt in its regulations.  See G. L. c. 83, § 15; Board Regulations § 1.4.  The constitutionality of § 15 is well-settled, see W.R. Grace & Co.-Conn. v. Acton, 62 Mass. App. Ct. 462, 464 (2004) (W.R. Grace), and the board does not challenge it here.  What the board has failed to call into question is the proportionality (and thus, the propriety) of the method set forth in the regulations for determining the assessment using past water usage history.

We view our opinion in W.R. Grace as instructive.  See W.R. Grace, 62 Mass. App. Ct. at 464.  As in that case, "the fundamental criteria set forth in G. L. c. 83, § 15," that is, "conversion based on residential equivalents and zoning then in effect," were included in the board's regulations.  Id. at 464-

9

465.  Likewise, we discern nothing "arbitrary or irrational" in those determinations, to the extent that they are addressed by the record.  Id. at 465.  As in W.R. Grace, the relevant considerations "are grounded in a direct relationship between those determinations and expected use of the system, i.e., flow rates in gallons per day."  Id.  We do not suggest that the method the board chose to include in the regulations was the only permissible method, or even that it was the optimal one.  We note only that it was the method the board did choose, and that it was permissible.  Having chosen that method, the board was constrained here to follow it.[10]  See Warcewicz, 410 Mass. at 552.

Conclusion.  The judgment is affirmed.

So ordered.

By the Court (Vuono, Milkey & Hand, JJ.[11]),

Assistant Clerk

Entered:  March 8, 2024.

---

[10] We are likewise unpersuaded that the regulations relating to the assessment of betterments are inconsistent with the regulations as a whole, or, more specifically, the regulations concerning sewer use charges.  Either way, "[t]he regulations are clear and unambiguous, and no resort to legislative history or 'intent' seems warranted."  Cohen, 411 Mass. at 749.

[11] The panelists are listed in order of seniority.

10